THE PEOPLE OF THE STATE OF NEW YORK ex rel. THE BRONX GAS AND ELECTRIC COMPANY, Appellant, *v.* EDWARD P. BARKER and Others, as Commissioners of Taxes and Assessments of the City and County of New York, Respondents.

*Assessment rolls in New York city become final on June first — a writ of certiorari issued on June twenty-ninth is not premature.*

The provisions of the General Tax Law (Laws of 1896, chap. 908, §§ 250, 251), relative to the time when a petition to review an alleged illegal assessment must be presented to the court, have no application to assessments for taxation made by the city of New York which are exclusively controlled by the provisions of the Consolidation Act (Laws of 1882, chap. 410).

Under sections 817, 819 and 820 of the act of 1882, the assessment rolls become final, in any event, on June first, although they are not to be delivered to the board of aldermen until July first, and a writ of certiorari issued on June twenty-ninth to review an alleged illegal assessment, made by the commissioners of taxes of the city of New York, is not prematurely issued.

APPEAL by the relator, The Bronx Gas and Electric Company, from a judgment of the Supreme Court in favor of the defendants,

162  PEOPLE ex rel. BRONX GAS CO. *v.* BARKER.

First Department, November Term, 1897.  [Vol. 22.

entered in the office of the clerk of the county of New York on the 13th day of October, 1897, quashing a writ of certiorari issued to review the assessment of its real property for the purposes of taxation, and also from an order made at the New York Special Term, bearing date the 5th day of October, 1897, and entered in said clerk's office, upon which said judgment was based.

*Alfred B. Cruikshank*, for the appellant.

*James M. Ward*, for the respondents.

PATTERSON, J.:

The relator applied for and obtained a writ of certiorari to review the action of the respondents in making an assessment of its real property for the purposes of taxation for the year 1897. Before the return day, the respondents moved to quash the writ. The motion was granted on the ground that the writ had been prematurely obtained, and that the court was, therefore, without jurisdiction to entertain the proceeding. From the order entered upon that decision this appeal is taken.

It was held by the judge at Special Term that it was shown by the petition that the assessment roll had not been completed when application for the writ was made, and that, therefore, there was nothing which properly could be reviewed or corrected. That supposed incompleteness grows out of the fact that the assessment rolls, or books made up by the commissioners of taxes, were not delivered to the board of aldermen until the 1st of July, 1897, and that the writ was issued on the twenty-ninth of the preceding June. It is provided in the Tax Law (Laws of 1896, chap. 908, § 250) that any person assessed upon an assessment roll, claiming to be aggrieved by reason of any assessment upon property therein, may present a petition to the Supreme Court setting forth that the assessment is illegal, and that such petition must show that application *has been made in due time* to the proper officers to correct such assessment. Section 251 of the same act provides that the petition must be presented to a justice of the Supreme Court, or at a Special Term of the court in the judicial district in which the assessment complained of was made, within fifteen days after the completion and filing of

the assessment roll and the first posting for publication of the notice thereof as required by the act.    The learned judge at Special Term applied this provision of the Tax Law, holding, in effect, that its terms were imperative.    It is true that the statute is a general law, but it is also true that it does not operate to repeal the provisions of the Consolidation Act relating to the powers and duties of the commissioners of taxes in the city of New York with respect to the revision or correction of assessments upon property in the city of New York.    Those provisions have been preserved.    Section 280 of the Tax Law enacts that the laws enumerated in the schedule annexed thereto are repealed.    In that enumeration are included various provisions of the Revised Statutes, and something like 150 other statutes, or parts of statutes, relating to taxation, enacted between the years 1835 and 1895.    The Consolidation Act is chapter 410 of the Laws of 1882, and no part of that act is enumerated among those repealed by the Tax Law.    The particular provisions of law, therefore, relating to the powers of the commissioners of taxes in the city of New York with respect to the review and correction of assessments are not affected by the Tax Law.

To ascertain whether the writ in this proceeding was prematurely issued, we must have recourse to the provisions of the Consolidation Act.    All that was necessary was that there should be a completed assessment book or roll ; that the commissioners of taxes should have acted definitely in fixing the amount of the assessment upon the relator's property, and should have taken final action, which could not be revised or altered, and which constituted an adjudication that could be reviewed.    The filing or posting of notice referred to in section 251 of the Tax Law can have no application, for there is no such thing as the filing of the assessment roll or posting of notice in the city of New York, within the meaning of that section.    The filing therein mentioned is evidently that required by section 38 of the Tax Law, which provides that an assessment roll, when completed and verified, shall be filed on or before September first in the office of the town or city clerk, there to remain fifteen days for public inspection.    That provision may apply to fifty-nine of the sixty counties of the State, but cannot have the remotest application to the city of New York.    The process in that city is, according to the provisions of the Consolidation Act, that tax books are opened on

**164** PEOPLE ex rel. BRONX GAS CO. *v.* BARKER.

First Department, November Term, 1897. [Vol. 22.

the second Monday of January of each year and remain open until May first; after May first (§ 817) the books are closed to enable the commissioners to prepare assessment rolls. During that period the commissioners may hear and act upon complaints. (§ 820.) On May first they prepare the assessment rolls from the books. On the first Monday of July the assessment rolls are delivered to the board of aldermen, with which board they remain, not accessible to any one, without written permission of the president of the board, until the board computes the taxes and completes, in certain particulars, the tax rolls, so that the amount of tax properly chargeable against each piece of property assessed is "set down or extended in the several assessment rolls or tax books," as required by another section. (§ 831.) It is provided by section 819 of the Consolidation Act that the commissioners may, at any time before the second of April of each year, increase or may diminish, at any time before the closing of the books of annual record on the first day of each year, the assessed valuation of any real or personal property. By section 820 it is provided that any person aggrieved may, while the books are open, make application to have the assessment corrected. As seen before, the books are open from the second Monday of January until May first, and by section 817 must be closed after May first. Those provisions of law evidently contemplate that, with the single exception of acting upon objections presented before May first, the power to correct stops with May first, and that in no event does that power extend beyond June first. This view is supported by decisions of the Court of Appeals in the case of *The People ex rel. The Twenty-third Street R. R. Co.* v. *Commissioners of Taxes* (91 N. Y. 593), where, upon a review of legislation similar to the provisions of the Consolidation Act, it was held that no power resided in the commissioners of taxes to change the record of assessments after the first day of June in any year. And in *Assn. for Colored Orphans* v. *The Mayor of New York* (104 N. Y. 581) it was held that, under the general scheme of taxation in the city of New York, incorporated in chapter 410 of the Laws of 1882 (Consol. Act), "there is no provision made for any amendment or alteration of the record after the first day of May in regard to the assessment of property (with an exception that does not touch this case), and all subsequent proceedings are based upon the absolute stability of the record

from that date, and the assessment rolls are to be correct and certified transcripts of the same."

What was necessary, in order to enable the petitioner to procure the writ in this case was a fixed and unchangeable assessment. Filing of the assessment roll was not necessary. His right to the writ must be governed by the general rule respecting applications of this character. It is a right which accrues when the determination to be reviewed becomes final and binding upon the relator (Code Civ. Proc. § 2125), that is to say, the writ must be granted within four calendar months after the determination to be reviewed becomes thus final and binding. As we have seen, the relator's petition was presented and the writ granted after the final determination, and within the period fixed by the Code.

The decision of the court below was wrong, and the order quashing the writ must be reversed and the writ reinstated, and the subject remitted to the Special Term for its determination upon the matters arising under the writ.

Van Brunt, P. J., Barrett, Rumsey and Williams, JJ., concurred.

Order reversed, with costs, and case remitted to Special Term.