THE PEOPLE OF THE STATE OF NEW YORK ex rel. ANNE D. THOMSON, Respondent, *v.* THOMAS L. FEITNER et al., as Commissioners of Taxes and Assessments of the City of New York, Appellants.

1. TAX — CERTIORARI TO REVIEW ASSESSMENT IN NEW YORK CITY — PROVISION OF TAX LAW AS TO TIME OF APPLICATION NOT APPLICABLE. The requirement of section 251 of the Tax Law (L. 1896, ch. 908), that a petition for a writ of certiorari to review an assessment for taxation must be presented within fifteen days after the completion and filing of the assessment roll and the first posting or publication of the notice thereof as required by law, has no application to assessments of property in New York city, since this section manifestly refers to provisions of

the Tax Law which apply to the state generally but not to the city of New York and which are not made obligatory therein by the declaration of section 886 of the charter of said city (L. 1897, ch. 378), that the duties theretofore devolved by law upon assessing officers in the municipalities consolidated by that act with the city of New York should be vested in the board of taxes and assessments in that city.

2. ASSESSMENT BY DEPUTY COMMISSIONERS NOT FINAL — ORIGINAL JURISDICTION OF BOARD OF TAXES AND ASSESSMENTS. Assessments for taxation in the city of New York made by deputy tax commissioners are not final because of the absence of complaint or proof of error made before them, as the board of taxes and assessments does not, in the matter of the correction of taxes, sit only as an appellate tribunal, but under the various provisions of the charter has original jurisdiction to assess, revise and cancel, the deputy commissioners being in no sense independent officers, but performing their duties under the direction and supervision of the board subject to its approval.

3. SUFFICIENCY OF APPLICATION TO REDUCE ASSESSMENT. An application to the commissioners of taxes and assessments in the borough of Manhattan for a reduction of the assessed valuation of real estate, which, after describing the property and pointing out that for the purposes of sale and improvement it is rendered of small value because of its narrow frontage, and the fact that on each side of it are modern buildings, shows its rental value for the previous three years, together with the highest valuation ever placed upon the property and the best offer ever made, and states that the reason of the low valuation is that the lot is too narrow for a high office building and the building itself is old and out of date, sufficiently states the ground of objection, under section 895 of the charter to enable the commissioners to act thereon.

4. FAILURE TO TAKE TESTIMONY ON APPLICATION NOT A JURISDICTIONAL DEFECT. The failure to take testimony upon the application is not a jurisdictional defect which will preclude the owner from suing out a writ of certiorari to review the determination of the commissioners denying her application, where the commissioners passed upon the facts contained in her written application, which were sufficiently set forth therein for them to act intelligently, supplemented by the recommendation of the deputy who acted in making the assessment.

5. RETURN TO WRIT OF CERTIORARI NOT CONCLUSIVE. It need not appear from the return to a writ of certiorari to review an assessment for taxation that the relator has been aggrieved before the court has jurisdiction to grant the writ, since, under the provision of section 253 of the Tax Law (L. 1896, ch. 908), that the court may take testimony itself, or by a referee, if upon the hearing it shall appear necessary to the disposition of the matter, the return is not conclusive.

6. RIGHT TO TAKE TESTIMONY ON HEARING. The right of relator to have testimony taken on certiorari to review an assessment for taxation is not an appeal to the discretion of the court as on a motion for a new trial;

but is a substantial right which must be granted, where issues of fact are framed by the petition and return, and evidence is necessary for their proper disposition, since the provision of section 253 of the Tax Law, that the court may take such testimony when necessary for the proper disposition of the matter, must be regarded as mandatory.

*People ex rel. Thomson v. Feitner,* 61 App. Div. 117, affirmed.

(Argued October 3, 1901; decided November 12, 1901.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the first judicial department, entered May 23, 1901, which affirmed an order of Special Term denying a motion of the defendants to quash a writ of certiorari to review their action in assessing certain real estate belonging to relator and granting relator's motion for the appointment of a referee.

The facts, so far as material, and the question certified are stated in the opinion.

*John Whalen, Corporation Counsel (James M. Ward* of counsel), for appellants. The assessments made by the deputy tax commissioners are made under authority of law by such deputies, as independent officers, and, in the absence of complaint and proper proof of error in such assessments, the assessments so made are final. (L. 1897, ch. 378, § 889; *People ex rel. v. Barker,* 14 Misc. Rep. 360.) The appellants, the board of taxes and assessments, in the matter of the correction of assessments, sit only as an appellate tribunal. (L. 1897, ch. 378, §§ 895–898, 899.) The charter provides a very precise method of invoking the appellate jurisdiction of the board of taxes. (L. 1897, ch. 378, §§ 892, 895, 898.) An application at Special Term to take testimony or refer is in the nature of an application for a new trial directed to the discretion of the court, and must be governed by the same rule as governs applications for new trials in proceedings at law. (*People ex rel. v. Barker,* 152 N. Y. 431; *People ex rel. v. Feitner,* 43 App. Div. 198.) At the time that the petition for the writ of certiorari in this proceeding was presented to the court, the court was without jurisdiction to entertain the

proceeding and allow the writ, because the time within which the Tax Law requires the petition for a writ of certiorari to be presented to the court had expired. (*People ex rel.* v. *Town of Greenburgh*, 43 Hun, 637; *Matter of Corwin*, 135 N. Y. 249; *U. S. Trust Co.* v. *Mayor, etc.*, 144 N. Y. 493; *People ex rel.* v. *Barker*, 152 N. Y. 430; *People ex rel.* v. *Feitner*, 30 Misc. Rep. 648; *People ex rel.* v. *Town of Greenburgh*, 106 N. Y. 671.)

*Leo Everett* and *Charles M. Hough* for respondent. The court has no jurisdiction to entertain this appeal. (*Matter of Robinson*, 160 N. Y. 448; *Matter of Coatsworth*, 160 N. Y. 114; *Blaschko* v. *Wurster*, 156 N. Y. 437; *Schenck* v. *Barnes*, 156 N. Y. 316; *Steinway* v. *von Bernuth*, 167 N. Y. 498; *People ex rel.* v. *Barker*, 155 N. Y. 308.) The justice at Special Term was required to entertain the proceeding for a review of the assessment of the relator's property upon the facts alleged in the petition, writ and return. (*People ex rel.* v. *Feitner*, 43 App. Div. 198; *People ex rel.* v. *Bd. of Suprs.*, 51 N. Y. 401; *People ex rel.* v. *Barker*, 152 N. Y. 417; *Matter of Winegard*, 78 Hun, 58.) The writ of certiorari was applied for within the time required by law. (*People ex rel.* v. *Barker*, 22 App. Div. 161; *People ex rel.* v. *Feitner*, 51 App. Div. 196; *People ex rel.* v. *Feitner*, 30 Misc. Rep. 646; *People ex rel.* v. *Feitner*, 49 App. Div. 385; 163 N. Y. 384.)

BARTLETT, J. This is a proceeding by certiorari to review an assessment for the purpose of taxation in the year 1899 of certain real property in the borough of Manhattan, city of New York, known as No. 38 Wall street, which consists of a lot twenty-one feet six inches front by ninety-six feet four inches deep, substantially covered by a building six stories in height. This property was assessed for the year 1899 at the sum of $270,000, an increase of $105,000 over the assessment for the year preceding and for several years prior thereto.

The relator, between the second Monday of January, 1899,

1901.]    People ex rel. Thomson *v.* Feitner.    445

N. Y. Rep.]      Opinion of the Court, per Bartlett, J.

and the first day of May in that year, presented to the defendants, commissioners of taxes and assessments, and filed in their office, a statement in writing, duly verified, claiming a reduction of the assessment on the ground that it was erroneous by reason of overvaluation and inequality.    The commissioners, after due consideration, refused to reduce the assessment.

As required by law the commissioners delivered the assessment roll to the municipal assembly of the city of New York on the first Monday of July, 1899.

On the 14th day of August following the relator filed a petition in the Supreme Court alleging overvaluation and inequality, and a writ of certiorari was issued thereon directed to the commissioners pursuant to the provisions of the Greater New York charter (§ 906).    The commissioners filed their return in compliance with the terms of the writ and thereafter the relator brought the proceeding on to be heard before the Special Term.    At that hearing the relator abandoned her allegation of inequality and raised only the question of overvaluation; she also moved upon the petition and return for the appointment of a referee to take evidence upon the issue of overvaluation.    At the same time the commissioners moved to quash the writ and deny relator's motion on two grounds: (1) That the petition for writ of certiorari had not been applied for within the time required by law; (2) that the proceedings taken by the relator before the commissioners of taxes, as set out in the return to the writ, were irregular and disqualified her to take this proceeding.

The court denied the motion of the commissioners and granted an order appointing a referee to take evidence upon the issues raised by the petition and return and to report the same to the court with his findings and conclusions.    On appeal the Appellate Division, by a divided court, affirmed this order.    (61 App. Div. 117.)

On motion of the commissioners the Appellate Division certified that there was a question of law which, in its opinion, ought to be reviewed by the Court of Appeals, to wit, " Did

the facts alleged in the petition and the writ of certiorari granted thereon, with the return thereto, require the court to entertain the proceeding for a review of the assessment of the property described in the petition, belonging to the relator, and to appoint a referee to take testimony therein?"

The counsel for the relator suggests that this is a double question, involving the inquiry, *first*, whether the court was required to entertain this proceeding; and, *second*, whether the court was required to appoint a referee to take testimony.

We overrule this objection and shall consider the question as certified.

As to the preliminary objection interposed by the commissioners, that the petition for the writ was not applied for within fifteen days, as required by the Tax Law (Laws of 1896, chap. 908, § 251), we are of opinion that this provision has no application to the case at bar. The relator contends that strictly construing the question as certified to this court this point is not raised and that we are confined to the question whether the facts alleged in the petition are sufficient to authorize the issuing of the writ. It must be admitted that the point is not without force, but we are inclined to dispose of this question on the merits.

In *People ex rel. Washington Building Co. v. Feitner* (163 N. Y. 384), while the point now before us was raised in a motion to quash or supersede the writ upon six enumerated grounds, this court in a brief prevailing opinion held that the writ had been properly quashed, and that the courts below rightly decided the question presented, and approved the reasoning which led to their determination. This case is reported below in 49 App. Div. 385. Mr. Justice RUMSEY closes his opinion as follows: " As to the objection that the writ was not sued out in time, we have nothing to add to what was said in *People ex rel. Bronx Gas & El. Co. v. Barker* (22 App. Div. 161)." In that case the Appellate Division of the first department held that the provisions of the General Tax Law, relative to the time when a petition to review an alleged illegal assessment must be presented to the court, have no

application to assessments for taxation made in the city of New York which were exclusively controlled by the provisions of the Consolidation Act. As the point was jurisdictional it is clear that this court adopted the conclusion reached in the case last cited.

The Greater New York charter is silent as to the time in which an application for a writ must be made.

The Code of Civil Procedure (§ 2125) provides that a writ of certiorari to review a determination must be granted and served within four calendar months after the determination to be reviewed becomes final and binding upon the relator. As this application for the writ was made within four months from the time the tax became final, it is unnecessary to determine whether the relator's time to file her petition is governed by this provision of the Code or whether absence of legislation on the subject leaves the time indefinite.

The amended charter (Ch. 466, Laws 1901, § 906), to take effect January 1st, 1902, limits the time in which to apply for the writ to the first day of November in the year in which the determination sought to be reviewed was made.

If the question be regarded as an open one in this court, it seems clear that the provisions of the Tax Law have no application.

Section 251 of that law provides that the petition must be presented within fifteen days after the completion and filing of the assessment roll and the first posting or publication of the notice thereof as required by law. This, concededly, refers to section thirty-eight of the Tax Law, which provides that the assessment roll, when completed, shall be filed on or before September first in the office of the town or city clerk, there to remain for fifteen days for public inspection. This section also requires the assessors to forthwith post a notice in a certain manner and to publish it in one or more newspapers in the proper town or city. This notice is to the effect that the assessment roll has been finally completed, filed and will be opened to public inspection. These particular provisions apply to the state generally, but not to the city

of New York, where the assessment roll is not completed in September, but is certified to the municipal assembly on the first Monday of July. (§ 907.)

The commissioners. in their return to the writ state that in accordance with the provisions of section thirty-eight of the Tax Law, which provisions. they allege are required to be observed by them by virtue of section 886 of the Greater New York charter, they did on certain days cause to be published in the city of New York a notice of such filing with the municipal assembly, and that the assessment rolls would remain open for public inspection for a period of fifteen days.

Section 886 of the charter above referred to reads: "All of the rights, powers and duties heretofore devolved by law upon the board of taxes and assessments in the city of New York, upon the department of assessment of the city of Brooklyn, and upon like departments, boards or officers of taxes and assessments other than for street improvements in the other municipal and public corporations or parts of municipal and public corporations consolidated by this act with the municipal corporation known as the mayor, aldermen and commonalty of the city of New York are hereby devolved, unless otherwise herein expressly provided, upon and vested in the board of taxes and assessments in The City of New York."

There is nothing in this section that requires the provisions of section thirty-eight of the Tax Law to be observed by the commissioners of taxes and assessments in the city of New York. The object of the section quoted is to bring the outlying cities and villages that were consolidated with the old city of New York within the statutory provisions applicable to the latter and to vest the board of taxes and assessments with all of the rights, powers and duties devolved by law upon the tax department of the various municipalities. The publication as set forth in the return, having no authority of law, is without effect. The application for the writ was seasonably made and this proceeding was regularly before the Special Term.

The relator's application to the Supreme Court is attacked upon the merits on two distinct grounds : (1) That the necessary steps were not taken, looking to a reduction of the assessment, between the second Monday of January and the thirtieth day of April, that would authorize the relator to apply to the commissioners of taxes and assessments for a reduction of the assessment ; (2) that assuming the application to have been regular, the petition presented to the Special Term was insufficient.

The first ground involves a construction of the provisions of the Greater New York charter relating to taxes and assessments, as the learned counsel representing the city of New York, in an able and interesting argument, insisted that in giving effect to the charter certain of its provisions and the requirements of the Tax Law have been repeatedly ignored by the lower courts.

We agree with the first position assumed by counsel that the scheme of assessment and taxation provided for the city of New York has no similarity to the general law applicable to the other portions of the State.

The other positions of the appellants' counsel are as follows : That the assessments by deputy tax commissioners are made under authority of law by such deputies as independent officers, and in the absence of complaint and proper proof of error their assessments are final ; that the appellant, the board of taxes and assessments, in the matter of the correction of assessments, sits only as an appellate tribunal ; that the charter provides a precise method of invoking the appellate jurisdiction of the board of taxes and assessments ; that unless these provisions are strictly complied with the Supreme Court has no jurisdiction to review a determination of the tax commissioners affirming a valuation fixed by their deputies ; that it must appear from the return that for any of the reasons stated in the petition the relator has been aggrieved before the court has jurisdiction to grant the writ ; that an application at Special Term to take testimony or refer is in the nature of a

450        People ex rel. Thomson *v.* Feitner.        [Nov.,

Opinion of the Court, per Bartlett, J.        [Vol. 168.

motion for a new trial addressed to the discretion of the court, and must be governed by the same rule as applies to a motion for a new trial in proceedings at law.

These positions of counsel will be considered in connection with the provisions of the charter and the facts set forth in relator's application and petition.

The contention that the assessments of the deputy commissioners are final, in the absence of complaint and proof of error made before them, and that the board of taxes and assessments sits only as an appellate tribunal, is unsupported by the provisions of the charter and contrary to the practical construction given to them by the appellants, the commissioners of taxes and assessments.

It is first necessary to ascertain the precise powers and duties of the deputy tax commissioners. The charter requires (§ 887) the board of taxes and assessments to appoint deputy tax commissioners, not exceeding forty, who shall perform under the direction and supervision of the board such duties as it shall prescribe. The board is required to give to the deputies such directions as it shall deem expedient to secure in all the boroughs and parts of the city equality of valuation of property for the purposes of taxation. The deputies hold their office during the pleasure of the board and are subject to removal as the deputies in other city departments.

There is nothing in this section to indicate that the deputies are independent officers, but on the contrary they are under the direction and supervision of the board and removable at its pleasure.

It is made the duty of the deputies (§ 889), under the direction of the board of taxes and assessments, to assess all the taxable property in their several districts, and to furnish the board with a detailed statement thereof, under oath, with such other information as the board may, from time to time, require.

We find here, as in section 887, the deputies acting under the direction of the board and reporting to it.

It is required (§ 890) that there shall be an office of the

department of taxes and assessments in the boroughs of Brooklyn, Queens, Richmond and the Bronx, at which the duties of the department of taxes and assessments in the several boroughs shall, under the direction of the board of taxes and assessments, be performed by such number of the deputies, *or other employees of the department,* as are deemed necessary and assigned to such duty.   Such offices are made in law a part of the main office of the department which is required to be maintained in the borough of Manhattan.   The remaining provisions of this section are not material.

Here again we find the deputies under the direction of the board and required, as were other employees, to perform such duties as were assigned them.

It is provided (§ 892) that there shall be kept in the several offices established by the department of taxes and assessments books to be called " The annual record of the assessed valuation of real and personal estate of the borough of ————," which are to be open for examination and correction from the second Monday in January until the first day of May in each year.

Applications for the correction of assessments are governed by section 895, which reads as follows : " During the time that books shall be open to public inspection as aforesaid, application may be made by any person or corporation claiming to be aggrieved by the assessed valuation of real or personal estate, to have the same corrected.   If such application be made in relation to the assessed valuation of real estate, it must be made in writing, stating the ground of objection thereto.   The board of taxes and assessments shall examine into the complaint, as herein provided, and if in their judgment the assessment is erroneous they shall cause the same to be corrected.   If such application be made in relation to the assessed valuation of personal estate, the applicant shall be examined under oath by a commissioner of taxes and assessments or a deputy tax commissioner, as herein provided, who are hereby authorized to administer such oath, and if the assessment as hereinafter provided be determined by the

452        People ex rel. Thomson *v.* Feitner.        [Nov.,

Opinion of the Court, per Bartlett, J.        [Vol. 168.

board of taxes and assessments to be erroneous, it shall cause the same to be corrected, and fix the amount of such assessment as the board of taxes and assessments may believe to be just, and declare its decision upon such application within the time and in the manner hereinafter provided. But the commissioners of taxes and assessments may, during the month of May in any year, act upon applications for the reduction of assessments upon either real or personal property filed in their offices on or before the thirtieth day of April preceding, and cause the amount of any assessment as corrected by the board of taxes and assessments to be entered upon the assessment rolls for the year in which such correction may be made."

It will be observed that during the period of inspection any person or corporation can apply for correction; that if application is in relation to the assessed valuation of real estate it must be in writing stating the ground of objection thereto. It is then made the duty of the board of taxes and assessments to examine into the complaint " as herein provided," and correct the assessment if in their judgment there is error. If the application involves personal estate the applicant shall be examined under oath *by a commissioner* or a deputy "as herein provided," and if the assessment be determined by the board to be erroneous, it shall cause the same to be corrected.

By the last sentence of the section the commissioners can, during the month of May, act upon applications for the reduction of assessments upon either real or personal property filed in their office before the thirtieth day of April preceding.

This section gives no support to the contention that the board of taxes and assessments sits only as an appellate tribunal, but, on the contrary, expressly provides that under certain circumstances the applicant for correction of assessment shall be examined under oath by a commissioner.

The provision in this section that the commissioners or their deputies shall proceed " as herein provided " evidently refers

to section 898 which deals with the application for the revision and cancellation of assessments in the several boroughs.

This latter section provides, in substance, that the board shall designate one or more deputies in each of the boroughs where an office of the department is maintained, who shall receive applications for revision and cancellation of assessments in their respective boroughs, take testimony on such applications and reduce the same to writing and transmit the same to the board of taxes and assessments in the borough of Manhattan, or to the office of any borough the board may prescribe *with his recommendation.*

Then follow provisions conferring on deputies the power to administer oaths and requiring them to transmit evidence to the board within ten days.

The section then provides that where the evidence is taken by the board of taxes and assessments decision shall be rendered within thirty days after the hearing is closed; and where evidence is taken by any commissioner, or a deputy, the determination of the board shall be rendered within thirty days after the application and the testimony have been filed with the board at the main office of the department in the borough of Manhattan.

This section confers upon the commissioners of taxes and assessments original jurisdiction in the matter of revision and cancellation and limits the deputy to the mere taking of testimony which he is to transmit to the board, not with his decision, but his recommendation. The use of the latter word is most significant.

The entire scheme of taxation as contained in the sections of the charter to which we have referred, and a few others unnecessary to discuss in detail, is harmonious and clearly discloses the legislative intention to vest in the board of taxes and assessments the full power to assess, revise and cancel. The deputy commissioners are in no sense independent officers, but perform all their duties under the direction and supervision of the board and subject to its approval.

Their assessments of property are under the direction and

supervision of the board (§ 889), and they are required to report to it a detailed statement of their proceedings; and their hearing of applications to revise and cancel results in nothing more than a recommendation (§ 898).

The main office of the board is in the borough of Manhattan, but the convenience of both the taxpayers and the board required that branch offices should be maintained in the outlying boroughs of Brooklyn, Queens, Richmond and the Bronx (§ 890), but the proceedings in all of these offices are under the direction and supervision of the board.

A careful reading of all the provisions of the charter relating to this general subject shows a legislative intention to constitute the board of taxes and assessments a tribunal of the amplest original jurisdiction and not to limit it to sitting only on appeals from the determination of the deputy commissioners.

The next question is whether the relator was regular in her application to the commissioners of taxes and assessments for a reduction of the valuation of her property, and whether upon the denial of the prayer of her petition she was entitled to apply for a writ of certiorari to review the determination of the commissioners in the Supreme Court (§ 906 of the charter).

As the real estate involved is located in the old city of New York the relator applied to the commissioners of taxes and assessments in the borough of Manhattan; and as it related to the assessed valuation of real estate her application was in writing, stating the ground of objection thereto (§ 895).

After describing the property it deals with the subject of its value with considerable detail, showing the lot is only twenty-one feet six inches in width, known as No. 38 Wall street, which is the center of that busy locality. It points out that the property, for the purposes of sale and improvement, is rendered of small value by reason of its narrow frontage and the fact that on each side of it are modern buildings, one owned by the Gallatin Bank and the other by the Manhattan Company. It further avers that the property,

which is assessed at $270,000 in value, contains no apparatus for generating heat or electric light, both having to be taken from outside; and that the rental value of the premises was in 1896, $4,405.86; in 1897, $2,762.18, and in 1898, $3,059.02; that the highest valuation that had ever been placed upon the property was $150,000, and the best offer ever made $135,000; that the reason of this low valuation in selling price is that the lot of land is too narrow for a high office building and the building itself is old and out of date.

There were certainly facts enough set forth in this application for the commissioners to have acted upon intelligently, and the record shows that they did so act and sought information from the deputy tax commissioner who made this original assessment, and have annexed to their return his report made on May second, 1899, wherein he states, "I have examined the complaint in the within application and find the property equitably assessed and in proportion to other property of a like character."

This shows a practical construction of the law by the commissioners, and that they did not regard it as essential to their action that the relator should have taken testimony before this deputy commissioner, as they applied to the latter without notice to the relator and made use of his reply in part as the basis of their action.

The commissioners undoubtedly could have examined witnesses on their own behalf, or required the relator to produce witnesses to be examined before a commissioner, or a deputy, in support of the application.

It would also have been proper for the relator to have requested an opportunity to examine witnesses on her own behalf. We do not, however, regard the failure to take testimony as a jurisdictional defect which would preclude a relator from suing out a writ of certiorari.

The taking of testimony in many cases is wholly unnecessary, for the reason that the application in writing sets forth undisputed facts, and it is for the commissioners to pass upon their sufficiency in the first instance.

The case before us is an illustration of such a situation; the commissioners passed upon the facts contained in the written application, supplemented by the recommendation of their deputy who acted in making the assessment.

A relator undoubtedly has the legal right to swear witnesses in support of his application to revise or cancel an assessment, and if his request for permission to do so is denied by a commissioner or a deputy, he can secure his day in court by suing out a writ of certiorari.

In the case at bar the relator's application to the commissioners was in conformity to the statute, and upon a denial of her request for a reduction of the assessment, she was in a proper situation to make application to the Supreme Court for a writ of certiorari to review the proceeding.

We will now consider the appellant's contention that the proceeding in the Supreme Court under the writ of certiorari is the same as on a motion for a new trial in an action at law, and that it must appear from the return to the writ that the relator has been aggrieved before the court has jurisdiction to grant the writ.

The charter of the city of New York, while providing for a certiorari to review or correct on the merits any final determination of the board of taxes and assessments (§ 906), does not deal with procedure, and, consequently, resort must be had to the Tax Law, article XI. (Laws 1896, ch. 908, § 250 *et seq.*)

Section 253 provides, in substance, that if it shall appear upon the return that the assessment complained of is illegal, etc., for any of the reasons alleged in the petition, the court may deal with it in the manner pointed out. The section then reads: " If upon the hearing it shall appear to the court, that testimony is necessary for the proper disposition of the matter, it may take evidence or may appoint a referee to take such evidence as it may direct, and report the same to the court, with his findings of fact and conclusions of law, which shall constitute a part of the proceedings upon which the determination of the court shall be made."

This court in *People ex rel. Manhattan Ry. Co.* v. *Barker* (152 N. Y. 417) considered the practice of reviewing the determination of the board of taxes and assessments by certiorari. At that time chapter 269, Laws of 1880, was in force, being an act for the review and correction of illegal, erroneous and unequal assessments. This act was repealed by the present Tax Law (Ch. 908, Laws 1896), but its essential provisions are preserved in the latter statute. Judge VANN, writing for the court, said : " The mode of procedure specified is by writ of certiorari with new and unprecedented powers, authorizing the determination of questions of fact upon further evidence taken in the court of first review. * * * Thus, we have a writ of certiorari with novel functions hitherto unknown to such methods of review. * * * The special statutory writ now before us differs from its predecessors in one remarkable respect, in that it permits a redetermination of all questions of fact upon evidence, taken in part at least, by the Special Term, or under its direction. * * * What is called a review may thus become a proceeding in the nature of a new trial. The return is not conclusive as in the common-law and Code writs. (*People ex rel. Miller* v. *Wurster*, 149 N. Y. 549 ; Harris on Certiorari, § 126.) The provisions of the Code do not apply to it. (*People ex rel. Church of H. C.* v. *Assessors, Town of Greenburgh*, 106 N. Y. 671.) The petition is regarded as the complaint, the return as the answer, and, in deciding the issues joined thereby, the court may call witnesses to its aid and their testimony becomes a part of the proceedings upon which the determination of the court is to be made."

It follows, in the case at bar, that the return to the writ is not conclusive and the right to take testimony is not, strictly speaking, an appeal to the discretion of the court as on a motion for a new trial, but is a substantial right, and the judge at Special Term is bound to deal with the testimony as courts deal with evidence, and not like a mere taxing officer. If issues of fact are framed by the petition and the return and evidence is necessary for their proper disposition,

the statute should be treated as mandatory, "may" is to read as "must," and the trial judge, or in his discretion a referee, should take the testimony.

If the statute is not thus construed it might frequently happen that the taxpayer would be denied his day in court.

It is unnecessary to consider the point as to the alleged insufficiency of the petition on which the writ was granted, as its allegations are similar to those contained in the written application to the commissioners, which we have examined and approved.

The order appealed from should be affirmed, with costs, and the question certified answered in the affirmative.

PARKER, Ch. J., O'BRIEN, HAIGHT, MARTIN and VANN, JJ., concur; LANDON, J., dissents.

Order affirmed.