PEOPLE ex rel. MOLLER v. O'DONNEL.    267

Misc.]                Supreme Court, May, 1905.

The People ex rel. Emma L. Moller and Isaac P. Smith, as Executors, etc., Relators, v. Frank A. O'Donnel et al., as Commissioners of Taxes and Assessments of the City of New York, Respondents.

(Supreme Court, New York Special Term, May, 1905.)

Tax Law — Section 2 — City of New York is a single tax district — Greater New York Charter, §§ 889, 890, 894, 898, relates to details of procedure — Tax Law — Section 8 — Personal Property — When taxable in different tax districts — Executor taxed in borough of Manhattan — Additional assessment in the Bronx illegal.

The city of New York having, for its five boroughs, a single board of assessors to assess property therein for state and county purposes is a single tax district within the meaning of section 2 of the Tax Law.

The provisions of the Greater New York Charter (L. 1897, ch. 378, as amd. by L. 1901, ch. 466) as to the making of the original assessments by the deputy tax commissioners (§ 889), the maintenance of the branch offices in the various boroughs and the keeping of the books and records there for the convenience of the taxpayers (§ 890), the hearing of applications for the reduction of taxes at the various borough offices (§ 898), and especially that part of section 894 which reads: " If, at any time prior to the first day of May in any year, it shall appear to the tax commissioners that a person assessed for taxation on personal estate on the books or rolls of one borough should have been assessed therefor on the books or rolls of another borough, they shall forthwith cause the assessment to be canceled and a new assessment to be made on the proper books or rolls, and within five days thereafter shall cause written notice of the new assessment to be mailed to such person at his last known residence or business address within The City of New York, and an affidavit of the mailing of such notice to be filed in the main office ", relate primarily to matters to be done in the several boroughs and are mere details of procedure, and while they may affect the validity of a tax where directly involved, do not affect the jurisdictional question as to what is the tax district.

Section 8 of the Tax Law requires that every person shall be taxed in the tax district where he resides for all the personal property under his control as executor and it is only where the property is under the control of two or more executors, residing

**268** PEOPLE ex rel. MOLLER *v.* O'DONNEL.

Supreme Court, May, 1905.                     [Vol. 47.

in different tax districts, that an assessment against each, for the portion held by him, is justified.

Accordingly, held, that where one as executor and trustee was assessed in the year 1904 in the borough of Manhattan, where he resided, an additional assessment made in the same year against his co-executor and trustee in the borough of the Bronx, where he resided, is illegal and void upon the ground that the estate was assessed twice in the same year and in an entire tax district.

APPLICATION to quash a writ of certiorari.

Arthur M. Silber (Howard R. Bayne, of counsel), for relators.

John J. Delany, Corporation Counsel (George S. Coleman and E. Crosby Kindleberger, of counsel), for respondents.

LEVENTRITT, J.   This is an application to quash a writ of certiorari and depends for its disposition on the determination of the question whether the city of New York is or is not a single tax district.

According to the petition, Joseph H. Goodwin died in New York county, August 9, 1903. Letters testamentary on his estate were issued on September 24, 1903, to the relators Emma L. Moller, a resident of the borough of the Bronx, and Isaac P. Smith, a resident of the borough of Manhattan.

On the assessment-roll for the borough of Manhattan for the year 1904 appeared an assessment in the following form:

| Index. | Personal estate assessed to. | Residence. | Value of personal estate. | Tax. |
|--------|------------------------------|------------|---------------------------|------|
| 1541. | Smith, Isaac P, as executor and trustee of J. H. Goodwin.................. ... | 45 W. 76..... | $150,000 | $2,270.13 |

This tax was paid by the relators in time to get the benefit of the rebate allowed by law and they received a receipt in full from the receiver of taxes.

The petition further shows that on the completed assess-

PEOPLE ex rel. MOLLER v. O'DONNEL.    **269**

Misc.]                Supreme Court, May, 1905.

ment-roll for the borough of the Bronx for the same year appears this entry:

| Index. | Personal estate assessed to. | Residence. | Value of personal estate. | Tax. | |
|--------|------------------------------|------------|---------------------------|------|---|
| 76. | Moller, Emma L., and Isaac P. Smith, as executors and trustees, estate of Joseph H. Goodwin | Kingsbridge Ave. and 230th street.. | $150,000 | $2,270 | 13 |

It is alleged that it was the intention of the tax board to place upon the relators, as executors and trustees of the estate of Joseph H. Godwin, a further assessment in addition to that imposed by the roll for Manhattan borough. The additional assessment is asserted to be illegal and void on the ground that the estate is assessed twice in the same year in an entire tax district.    The corporation counsel seeks to sustain the assessment on the ground that the city of New York is made up of five separate tax districts.

The error in the description of the estate as that of Goodwin, instead of Godwin, may be disregarded.    The entry in the first column of the first part of the assessment-roll (Tax Law, § 21, subd. 1) must be substantially accurate so as to enable a reasonably intelligent person searching the roll for an assessment against him to identify the name as intended for him, or the estate as the one for which he is acting in a representative capacity.    Rumsey Taxation, 27, 179, and cases cited.

The serious question arises under sections 2 and 8 of the Tax Law and certain sections of the Greater New York charter.

Section 2 of the Tax Law defines a tax district as follows: " Tax district as used in this chapter means a political subdivision of the state having a board of assessors authorized to assess property therein for state and county taxes."

It is to be noted that the use of this term as defined was original in the Tax Law (Laws 1896, chap. 908).    Section 8 of the law provides:  " Every person shall be taxed in the tax district where he resides when the assessment for taxation is made, for all personal property owned by him, or un-

der his control as  *  *  *  executor  *  * . *.  Where taxable personal property is in the possession or under the control of two or more  *  *  *  executors.  *  *  *  re- siding in different tax districts, each shall be taxed for an equal portion of the value of such property so held by them."

If the borough of the Bronx and the borough of Manhat- tan can be treated as separate tax districts, the Bronx as- sessment, which is the sole one here involved, can be sus- tained on the theory of the presumption of law in favor of the legality of an official act; that is to say, it would be presumed that the commissioners had acted according to law and had imposed an assessment only upon one-half of the property held by the relators. People ex rel. Kellogg v. Wells, 92 N. Y. Supp. 5. "The burden would be on the relators to overcome this presumption by proof."

Under the Tax Law and the charter, however, the borough of the Bronx cannot be considered as a separate tax dis- trict. It is not a political subdivision of the State; it has not a board of assessors authorized to assess property therein for State and county purposes. The political sub- division is the city of New York; the department of taxes and assessments is one of the city departments, and it is the head of that department that is called the "Board of Taxes and Assessments." Greater N. Y. Charter, §§ 884, 885. There is no separate board for each of the five boroughs constituting the city, and it is not even incumbent that each borough be represented on the board, although no borough except that of Manhattan may have more than one resident as a member. Ibid. 885. The charter provides for a complete devolution of the rights, powers and duties of the several tax boards of the various municipal corpora- tions consolidated by the act on the "board of taxes and assessments in the City of New York" and authorizes this single board to adopt a common seal. § 886. It vests in the new board all the functions devolved by law upon the tax departments of the various municipalities. Peo- ple ex rel. Thomson v. Feitner, 168 N. Y. 441, 448. The main office of the board is in the borough of Manhattan;

PEOPLE ex rel. MOLLER v. O'DONNEL. 271

Misc.]                    Supreme Court, May, 1905.

branch offices are maintained in the boroughs of Brooklyn, Queens, Richmond and Bronx and the books and records are required to be maintained in such offices as may be most convenient to the taxpayers. Greater N. Y. Charter, § 890. The branch offices are declared in law to be part of the main office. Ibid. The deputy tax assessors assigned to the various branches and drawn from the various boroughs act under the direction of the board, are in no sense independent officers and have no power to assess, revise or cancel. That power is centralized in the board acting for the entire city; it alone assesses. People ex rel. Thomson v. Feitner, *supra*. The charter and the construction it has thus received clearly make the city of New York, which is a political subdivision of the State having a single board of assessors authorized to assess property, a tax district within the meaning of section 2 of the Tax Law.

The defendants invoke various sections of the charter to show that each borough is a separate tax district. Thus they instance the making of the original assessments by the deputy tax commissioners (§ 889), the maintenance of the branch offices in the various boroughs and the keeping of the books and records there for the convenience of the taxpayers (§ 890), the hearing of applications for the reduction of taxes at the various borough offices (§ 898), and especially, that part of section 894 which reads: "If, at any time prior to the first day of May in any year, it shall appear to the tax commissioners that a person assessed for taxation on personal estate on the books or rolls of one borough should have been assessed therefor on the books or rolls of another borough, they shall forthwith cause the assessment to be cancelled and a new assessment to be made on the proper books or rolls, and within five days thereafter shall cause written notice of the new assessment to be mailed to such person at his last known residence or business address within The City of New York, and an affidavit of the mailing of such notice to be filed in the main office."

I think none of these provisions taken singly or together sustains the claim made. They relate primarily to matters of procedure, and while they may affect the validity of a

tax where directly involved, do not affect the jurisdictional question as to what is the tax district. They are not in conflict with the theory of a single centralized body acting for a single political subdivision. Though the original tentative assessment is to be primarily made by the deputies, they act only " under the direction of the board of taxes and assessments " (§ 889) and their valuations are merely advisory. The keeping of the records in the borough branch offices is, by the terms of the section, for the convenience of the taxpayers. § 890. Though applications for correction may be made at the branches, the deputies designated to act get their authority by a special appointment from the board, have no power to act on the applications, but must simply reduce the testimony to writing and transmit to the board with their recommendations. § 898. Nor does the provision quoted from section 894 require a construction that each borough is a separate tax district. Its purpose is in line with those provisions which contemplate that notice shall come to the taxpayer of an assessment against his real or personal property. Ordinarily no formal notice is required to be sent to a taxpayer of an assessment; the sending of a written notice is a voluntary act. The opening of the books in the boroughs, where they are required to be kept with an opportunity for inspection, is the notice contemplated. The law makes adequate provision that the taxpayer may know by examination at the designated place whether his property has been assessed. If he finds no assessment he has the right to assume that there is none. Therefore, if by error his name and his property are erroneously entered on the books or rolls of a borough other than the one in which they should have been entered, the law requires a cancellation and the entry of a new assessment on the proper books coupled with actual written notice so that the person may not be deprived of his right to apply for a correction. If no actual notice is given, the assessment is void, not because the person has not been assessed in the tax district in which he resides, but because he has not had the notice contemplated by law, because the procedure required by the charter which was in-

tended to bring knowledge of the assessment home to him, *i. e.*, entry of the assessment in the proper borough, has not been complied with.

The direction " to cancel " and to make a " new assessment " in section 894 does not, to my mind, permit the argument that the use of these words indicates an assessment in the wrong tax district as that word is used in the State law. The procedure commanded by statute not having been followed, and there being an erroneous entry on one roll, it must of necessity be " canceled " before it can properly be entered on another. The use of the words " new assessment " does not mean an assessment *de novo*. No further proceedings are required by the deputies, or by the board toward fixing the amount of the assessment. That remains. The tax commissioners are directed " forthwith " to cause the new assessment to be made on the proper books or rolls. It requires simply a transcription from the wrong to the right roll. It does not require a new assessment to be made; it requires a new assessment on the proper books. There being no entry on the right books, any thereon will be a new one. The effect of the whole provision is to direct not the institution of a further original proceeding, but simply a transcription, a transference.

As a result of this review of the section of the charter and the Tax Law, I am of the opinion that, on principle, the city of New York is a single tax district. This view also finds support in authority.

In McHarg v. Gaus, 169 N. Y. 18, the court held in a case involving taxation in the city of Albany, that chapter 86 of the Laws of 1850, providing for the assessment and collection of taxes in that city, should be construed in harmony with the Tax Law. The act of 1850 required taxation to be made by wards and the preparation of a separate assessment-roll for each ward. The Tax Law required that each person be taxed in the tax district where he resides. Construing the sections together, the court held that the city of Albany being a political subdivision of the State, having a board of assessors authorized to assess property therein for State and county taxes, an assessment on the roll of

18

a ward other than the ward of the person's residence was not a jurisdictional defect, although it might invalidate the assessment if it resulted in a failure of notice to the person taxed. " Thus, the city of Albany is a single tax district under the general law, and the direction in the act of 1850 to ' prepare an assessment roll for each of the wards in the said City ' is a detail of procedure in exercising jurisdiction, namely, to assess every taxable person in the tax district; a detail not necessary to acquiring or retaining jurisdiction; important, and its omission or irregular or erroneous execution, no doubt ·fatal, where it results in a failure to give the person assessed that timely notice which due process of law exacts, but not so where, notwithstanding the imperfection, error or irregularity, such person does receive timely notice and acts upon it." P. 26.

So, in the case at bar, the city of New York is a tax district under the general law, and the directions as to the books to be kept and the matters to be done in the several boroughs are mere details of procedure. Where omissions to comply with the statutory requirements, or to make the correction in a proper case, required by section 894 of the charter, result in a failure to give the person assessed the notice contemplated, then the assessment may be bad, but the city of New York, as a whole, does not remain the less a single tax district.

It follows from this discussion that the city of New York, being a single tax district, there was no authority to make the second assessment complained of. The requirement of section 8 of the Tax Law is that each person shall be taxed in the tax district where he resides for *all* the personal property under his control as executor, and it is only where the property is under the control of two or more executors residing in different tax districts that an assessment against each for the portion held is justified.

I conclude, therefore, that the writ should not be quashed.

Motion to quash denied.