judgment could not be determined upon habeas corpus.   But here the relator is held under a warrant based upon an indictment upon which a trial has been had and the relator acquitted, and the defendant claims to hold the relator upon that warrant and that warrant only.

Since the acquittal there has been no adjudication by the court that the relator should be continued in imprisonment, nor is he held upon any process of any court issued after his trial, and, assuming that the discharge of the jury was equivalent to an acquittal, I think the case is clearly brought within section 2031 of the Code of Civil Procedure, and the relator is entitled to his discharge.

---

(139 App. Div. 473.)

## In re RITTER PLACE IN CITY OF NEW YORK.

### In re ESCH.

(Supreme Court, Appellate Division, First Department.   July 7, 1910.)

1. TAXATION (§ 734*)—TAX LEASES—VALIDITY.

In order to devest the title of the owner of real property by tax lease, it is essential that it appear that the officers attempting to lease the property for the tax strictly complied with all the provisions of the law having a semblance of benefit to the owner.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1470–1473; Dec. Dig. § 734.*]

2. TAXATION (§ 689*) — TAX SALES — CANCELLATION — STATUTES — "CONVEYANCES."

Laws 1891, c. 217, relating to tax sales, amended Laws 1885, c. 448, § 65, applicable to the same subject, so as to make it apply to all counties of the state except Cattaraugus and Chatauqua, and declared that all applications made to the comptroller for the cancellation of any tax sale by any person interested in the event thereof, should be heard and determined by him subject to review by certiorari or otherwise, and then declared that its provisions should be applicable to "all conveyances made by county treasurers or county judges, and to all outstanding certificates from county treasurer's sales."   Held, that the provision as to the application of the act should be construed to mean all conveyances by which the comptroller or county treasurers were authorized to convey the fee and vest an absolute title in the purchaser, and did not include tax leases issued by county treasurers under special laws.

[Ed. Note.—For other cases, see Taxation, Dec. Dig. § 689.*

For other definitions, see Words and Phrases, vol. 2, pp. 1575–1584; vol. 8, p. 7619.]

3. TAXATION (§ 788*)—TAX LEASES—CONCLUSIVENESS—TAX LAW—"CONVEYANCES."

Tax Law (Laws 1896, c. 908) § 132, re-enacted as Laws 1909, c. 62 (Consol. Laws, c. 60), provides that every conveyance previously executed by the comptroller, county treasurer, or county judge, and all conveyances of the same land by his grantee or grantees named therein which have for two years been recorded in the office of the clerk of the county in which the lands conveyed are located, and all outstanding certificates of tax sale previously made by the comptroller, in force for two years, shall be conclusive evidence that the sale and proceedings prior thereto from and including the assessment of the lands, and all notices required by law to be given previous to the time allowed for redemption, were regular, etc.   Held, that the words "county treasurer, or county judge," were inserted to validate sales by the comptroller and county treasurer,

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

or county judge in counties in which were included lands of the forest preserve, sold pursuant to Laws 1893, c. 711, § 12, re-enacted as Laws 1896, c. 908, § 132, and that the conclusiveness of the conveyances, etc., specified in such section, applied only to conveyances of the fee under the various pre-existing tax acts, and did not apply to a tax lease of land in Westchester county, executed by the county treasurer thereof, as authorized by Special Act 1860 (Laws 1860, c. 454), as amended by Laws 1861, c. 81.

[Ed. Note.—For other cases, see Taxation, Dec. Dig. § 788.*]

In the matter of proceedings to acquire title to the Ritter Place in New York City. On motion to confirm referee's report in the matter of the claim of John Esch for an award of damages to parcel No. 1. Referee's report set aside, and case referred to another referee.

See, also, 134 App. Div. 954, 118 N. Y. Supp. 1137.

Argued before INGRAHAM, P. J., and McLAUGHLIN, CLARKE, SCOTT, and DOWLING, JJ.

F. W. Hottenroth, for petitioner John Esch.

Henry G. Sanford, for claimants Valentine Mott and others.

INGRAHAM, P. J. In this proceeding which was to acquire title to certain real property for Ritter Place in the city of New York, the commissioners of estimate and assessment made an award for parcel No. 1 on the Damage Map of $9,364.33, which sum was deposited with the chamberlain of the county of New York, whereupon John Esch presented a petition to this court asking for the payment of such award. The heirs at law and devisees of Valentine Mott appeared in opposition to this claim of the petitioner, and the question as to who was entitled to this award was referred by this court to a referee, who has reported in favor of the petitioner, and the matter now comes up for a final order.

The property in question was by deed dated January 15, 1855, conveyed by Mary Waddell to Valentine Mott, which deed was duly recorded in the office of the clerk of the county of Westchester on the 31st of January, 1855, and it was conceded upon the hearing before the referee that Valentine Mott was the last owner of record of the fee of this lot. On the 1st of August, 1863, a lease was executed by Gilbert S. Lyon as county treasurer of the county of Westchester to Jason Rogers of the town of Morrisania, which recited: That the county treasurer had received from the collector of the town of West Farms an account of unpaid taxes on this plot of land, and the county treasurer by virtue of the power in him vested and after due notice for that purpose published according to law did sell at public auction at the courthouse in the town of White Plains in the county of Westchester on the 3d of February, 1862, the lot of land therein described for the lowest term of years for which any person offering to take the same in consideration of advancing the sum necessary to discharge the taxes, interest, and expenses due thereon at the time of sale, and that one Henry became the purchaser at such sale for the term of 1,000 years for the sum of $2.57; that being the amount of tax charged on said parcel or lot with interest and expenses due thereon, and that be-

ing the lowest term of years for which any person offered to take the same. That the said parcel or lot of real estate had not been redeemed within the one year prescribed by law for a redemption thereof, and that the certificate of sale had been duly assigned to Rogers, party of the second part, and the county treasurer of the county of Westchester therefore granted, bargained, sold, demised, conveyed, and released to Rogers for the term of 1,000 years the said real estate therein described. This instrument was recorded August 1, 1863, in the office of the register of Westchester county, and the title of Rogers under this lease has become vested in the petitioner. Before the referee the petitioner based his right to this award solely upon the title or interest in the land acquired by this tax lease. The heirs at law of Valentine Mott then offered evidence tending to show that the provisions of the statute in regard to a sale for unpaid taxes had not been complied with, and that no interest in the land had been acquired by virtue of the tax lease. This testimony was objected to by counsel for the petitioner on the ground that, under the provisions of section 132 of the former tax law (being chapter 908 of the Laws of 1896, re-enacted as chapter 62, Laws 1909 [Consol. Laws, c. 60]), this lease was made conclusive evidence that the sale and proceedings prior thereto from and including the assessment of the land and all notices required by law to be given previous to the expiration of the time allowed for redemption were regular and regularly given, published, and served according to the provisions of all laws directing and requiring the same or in any manner relating thereto. This contention was sustained by the referee, all evidence in relation to the regularity of this tax sale stricken from the record, and the referee reported that the owner of the tax lease was entitled to the award. The question presented is as to the effect of this section 132 of the tax law.

It has been the settled law in relation to the enforcement of tax leases that to divest the title of the owner of real property it was essential that the officers attempting to sell the property for a tax should strictly comply with all the provisions of the statute "having the semblance of benefit to the owner." See Clason v. Baldwin, 152 N. Y. 210, 46 N. E. 322, and cases there cited. So that unless the effect of section 132 of the tax law changes this rule of law, the heirs at law of Valentine Mott should have been allowed to prove the irregularity of the tax sale and to have that question considered by the referee.

Chapter 427 of the Laws of 1855 was entitled an act in relation to the collection of taxes on lands of nonresidents, and to provide for the sale of such lands for unpaid taxes. It provided for an annual return of the arrears of taxes by the treasurers of the counties in which the lands were assessed to the comptroller; that whenever any account of arrears of taxes should be transmitted to the comptroller and any tax charged on such lands shall remain unpaid for two years from the first of May following the year in which the same were assessed, the comptroller should proceed to advertise and sell such lands in the manner therein provided.

Section 63 provided that, if no person should redeem such lands within two years, the comptroller should at the expiration thereof ex-

ecute to the purchaser, his heirs or assigns, in the name of the people of the state, a conveyance of the real estate so sold, which shall vest in the grantee an absolute estate in fee simple. Section 65 provides that all conveyances executed by the comptroller of lands sold by him for taxes shall be presumptive evidence that the sale and all proceedings prior thereto, from and including the assessment of the lands and all notice required by law to be given previous to the expiration of the two years to redeem, were regular and according to the provisions of the act and all laws directing or requiring the same or in any manner relating thereto. By chapter 448 of the Laws of 1885, section 65 of this act was amended so as to provide that such conveyance shall be executed by the comptroller, under his hand and seal, and:

"All such conveyances that have been heretofore executed by the comptroller, and all conveyances of the same lands by his grantee or grantees therein named, after having been recorded for two years in the office of the clerk of the county in which the lands conveyed thereby are located * * * shall * * * be conclusive evidence that the sale and all proceedings prior thereto, from and including the assessment of the land and all notices required by law to be given previous to the expiration of the two years allowed by law to redeem, were regular and were regularly given, published and served according to the provisions of this act, and all laws directing or requiring the same, or in any manner relating thereto, and all other conveyances or certificates heretofore or hereafter executed or issued by the comptroller, shall be presumptive evidence of the regularity of all the said proceedings and matters hereinbefore recited, and shall be conclusive evidence thereof from and after the expiration of two years from the date of recording such other conveyances or of four years from and after the date of issuing such other certificates."

By chapter 217 of the Laws of 1891, the provisions of this act were made applicable to all counties in the state except the counties of Cattaraugus and Chatauqua, and also applicable to all conveyance made by county treasurers or county judges and to all outstanding certificates from county treasurer's sales.

The act carefully protects the owner of property by awarding ample time for redemption, provisions which give much more protection to the owner of property sold for taxes than is contained in the local act relating to Weschester county providing for leases where land has been sold for nonpayment of taxes made by the county treasurer.

Prior to the passage of chapter 217 of the Laws of 1891, the provisions of this act applied only to certain counties in the state which were subsequently included in what was called the forest reserve, and the provision which made a conveyance conclusive evidence that the sale and all proceedings prior thereto from and including the assessment of the lands and all notices required by law to be given to the expiration of the two years allowed by law to redeem were regular and were regularly given, published, and served according to the provisions of this act could only apply to sales by the comptroller and conveyance executed by him. By the express provision of the act this presumption applied only to "such conveyances" which were conveyances which should vest in the grantee an absolute estate in fee simple. The act of 1891 (chapter 217) made the provisions of the act as amended applicable to all the counties in the state except the counties of Cattaraugus and Chatauqua. It provided that all application

made to the comptroller for the cancellation of any tax sale by any person interested in the event thereof should be heard and determined by him, and his determination should be subject to review by certiorari or otherwise.   And then follows the clause:

"The provisions of this act shall be applicable to all conveyances made by county treasurers or county judges and to all outstanding certificates from county treasurer's sales."

Just what was intended by this provision does not clearly appear; but I think it would be giving to it a much broader application than was intended to hold that it extended the presumption given to a deed executed by the comptroller which was to convey a fee simple to the purchaser at a tax sale to a county treasurer's lease that had been theretofore executed under special acts which provided for an entirely different system for enforcing payment of taxes and which were applicable to but one county.   The Legislature was amending an act which had been applicable to certain counties constituting but a limited area of the state where the comptroller was required to sell the lands of delinquent taxpayers where certain safeguards were provided whereby the owners of the land could prevent a conveyance which would divest them absolutely of all title or interest in it.   The object of the act of 1891 was to extend the provisions of the act under which the comptroller should sell for unpaid taxes to other counties which would include the county of Westchester, and it then provided that the provisions of the act should extend to conveyances made by county treasurers and county judges of the other counties.   But that certainly could not be intended to extend to the tax leases made by county treasurers of other counties a presumption which by the act was only to apply to the comptroller's conveyances which would vest in the grantee a good title in fee.   The act was speaking of certain specific conveyances and had relation only to them. The subject of the effect of leases given by the county treasurers of Westchester county was not within the purview of the act, and the fact that the act itself was to be applicable to all conveyances made by county treasurers or county judges does not indicate an intention to provide that the presumption given by the act to a specific conveyance by the Comptroller of the State should also be given to leases by the county treasurers of the state made under a special law which was not then under consideration.

In the year 1860 the Legislature passed a special act (Laws 1860, c. 454) authorizing the sale of lands for nonpayment of taxes and for the collection of unpaid taxes in the county of Westchester.   It provided that, whenever the county treasurer of the county of Westchester should receive from the collector an account of unpaid taxes as required by law, it should not be his duty to transmit such an account or any part thereof to the comptroller, but that such taxes should be collected as thereinafter provided.   The county treasurer was then directed to cause a list of the unpaid taxes on lands and tenements in each town to be published in a newspaper with a notice that, if such taxes were not paid before a certain day, such lands and tenements would be sold at public auction for the shortest period of

time that any person or persons would offer to take the same in consideration of advancing the said taxes and interest. The county treasurer should then proceed to sell such lands and tenements on which the taxes should not have been paid and should give to the purchaser a certificate thereof specifying the property sold and the time when the purchaser would be entitled to a lease of such premises; that at the expiration of one year from the time of such sale the purchaser or his assigns should be entitled to a lease of such premises provided no redemption thereof had been made and at the expiration of the said one year the county treasurer was authorized to execute to the purchaser, his executors, administrators, or assigns, a lease under the hand and seal of the county treasurer of the lands and tenements so sold for such term as the same shall have been sold, and such lease should be conclusive evidence that the sale was regular according to the provisions of the act. This act was amended by chapter 81 of the Laws of 1861 and was in force on August 1, 1863, when the lease under which the petitioner claims was executed by the county treasurer of Westchester county.

There is nothing in the act of 1891 which indicates an intention to repeal the special act relating to Westchester county, and certainly nothing to justify the conclusion that it was the intention of the Legislature to give to these leases executed by the county of Westchester the presumption that the act of 1855 as amended by chapter 448 of the Laws of 1885 gave to "such conveyances" executed by the comptroller which gave to the grantee a fee in the premises conveyed. And this conclusion I think is strengthened by chapter 711 of the Laws of 1893. By this act the act of 1855 as amended by the acts of 1885 and 1891 was revived, and an act passed which provided for sales by the Comptroller of the State for unpaid taxes and redemptions of land in counties including any portion of the forest preserve. A method was here provided by which the Comptroller of the State was to sell any land in a county including a portion of the forest preserve returned to him for nonpayment of any tax thereon. By section 11 of the act it was provided that the comptroller should execute in the name of the people of the state to the purchaser at a sale a conveyance of any lands sold by him for taxes and not redeemed which should vest in the grantee an absolute estate in fee simple and which should be presumptive evidence that the sale and all the proceedings prior thereto from and including the assessment of the lands sold, and that all notices required by law to be given previous to the expiration of the time allowed by law for the redemption thereof, were regular and in accordance with all the provisions of law in relation thereto, and after two years from the date of such conveyance such presumption should be conclusive. And by section 12 it was provided that every such conveyance theretofore executed by the comptroller, county treasurer, or county judge which have for two years been recorded in the office of the clerk of the county should be conclusive evidence to the same effect. By article 2 of that chapter provision was made for the sale of any tax charged on nonresident real estate not in the forest preserve counties; that the county

treasurer should not return to the comptroller such unpaid taxes, but should advertise a sale of such real estate as therein provided. It was further provided that the provisions relating to conveyances and their effect, cancellation, and redemption of lands in counties including the forest preserve are applicable to such sales except as thereinafter specifically provided. Section 34 provides that if such real estate is not redeemed the county treasurer should execute to the purchaser a conveyance of the real estate so sold, which shall vest in the grantee an absolute estate in fee, and the act of 1856 and acts amendatory thereto were repealed by that act. Here it was clearly intended to confine the effect of this presumption to conveyances of the fee. No provision was contained in the act as to the effect of a lease made by a county treasurer prior to the passage of the act, and the provisions of the act allowing a redemption were not made applicable to such a lease' given under a special act relating only to one county. Section 12 of the act provides for the effect of former deeds, but it was confined to such conveyances; that is, a conveyance that should vest in the grantee an absolute title in fee simple which remained in force for two years after the last day allowed by law for the redemption of each sale. Section 65 of the act of 1855, which had been amended by chapter 448 of the Laws of 1885, was expressly repealed. By chapter 908 of the Laws of 1896 the laws in relation to taxation were revised, and the unrepealed portions of chapter 427 of the Laws of 1855 as amended by the subsequent statutes and chapter 711 of the Laws of 1893 were included in that revision. Article 6 of that act re-enacted the provisions of the first article of chapter 711 of the Laws of 1893, which contained the provision in relation to conveyances by the Comptroller of the State and their effect Article 7 of the tax law was a substantial re-enactment of article 2 of chapter 711 of the Laws of 1893, providing for sales by county treasurers for unpaid taxes. Section 154 provided for the conveyance and its effect; but article 2 contained no provision as to the presumption to be given to leases made by county treasurers prior to the passage of the act, and both chapter 427 of the Laws of 1855 and chapter 711 of the Laws of 1893 were repealed.

I have presented a review of the legislation affecting this question as important in determining the effect of section 132 of the tax law as that is the only law that is now in force. The insertion of the words "county treasurer or county judge" in section 12 of the act of 1893 was evidently for the purpose of validating a sale by the comptroller and county treasurer or a county judge in counties in which were included lands of the forest preserve, and section 132 of the tax law was a re-enactment of that provision. I think this provision must be confined to conveyances made either by the comptroller or a county treasurer under the various acts to which attention has been called which convey to the purchaser a fee of the property and have no application to a lease made under a special statute and are therefore not applicable to the tax lease upon which the petitioner here relies. The referee, therefore, erroneously held that this tax lease was conclusive evidence of the regularity of the pro-

ceedings, and the owners of the fee were entitled to introduce evidence to show that the tax lease was irregular in not strictly complying with the provisions of the statute.

It follows that the referee's report must be set aside, and the case referred to another referee to determine the question as to the validity of this tax lease and the person or persons to whom this award should be made. All concur.