LAURENCE B. HALLERAN, Plaintiff, *v.* SAVERIA MANZIONE, BOB'S SERVICE STATION, INC., SOL DAVIS, ELIZABETH ANDERSON, Individually and as Executrix, etc., of MARY GRIFFIN, Deceased, MARY A. FERLAZZO (Formerly MARY A. GRIFFIN), FLORENCE M. GRIFFIN, Individually and as Administratrix, etc., of GEORGE GRIFFIN, Deceased, HENRY ALBERT GRIFFIN, MILDRED M. GRIFFIN, HOWARD R. GRIFFIN, and THE HAYFORD REALTY CORP., Defendants.

Supreme Court, Queens County, February 17, 1938.

[roster/editorial content redacted]

*Roe & Kramer* [*A. J. Madison* of counsel], for the plaintiff.

*Samuel Robert Weltz*, for the defendants Henry Albert Griffin, Mary A. Ferlazzo (formerly Mary A. Griffin), Florence M. Kimball (formerly Florence M. Griffin), individually and as administratrix, etc., of George Griffin, deceased, Howard R. Griffin, an infant, by Mary A. Ferlazzo, his guardian *ad litem*.

CUFF, J. An objection is raised that this motion, not having been made within ten days after service of the answer, should not be entertained. Actually three years have passed since joinder of issue. The situation is unique. This action was moved to trial a few months ago. As a preliminary step at the trial defendant moved to strike out the defenses now under attack. After hearing a part of the argument the justice presiding declared a mistrial so that a motion could be made at Special Term. The trial justice was thoroughly justified in taking that action because the motion involved novel questions, the disposition of which was not particularly adaptable to the hurried treatment that necessarily would have to be accorded it at the trial because of the presence of a jury and of the waiting witnesses.

But did defendant have a right to wait until the trial to move to strike out the defenses? Rule 109 of the Rules of Civil Practice begins: " Within ten days after the service of an answer, the plaintiff *may* serve notice of motion to  *  *  *  strike out a defense." Nothing in that language forbids making the motion outside of the ten-day period mentioned, and likewise there is no stricture imposed by that or any rule against projecting an application at the trial to strike out defenses. No criticism may be made of plaintiff for reserving his motion until the combat opened. That was his right. The motion will be entertained and given the consideration that it would have merited if it had been made within the period prescribed in rule 109.

This action is in ejectment. The pleadings show that plaintiff would eject defendants from eight lots in Bayside, Queens county. Whatever title to or interest in these lots that defendants have comes to them by virtue of eight tax leases each for a term of one thousand years issued by the county treasurer of Queens county pursuant to the authority of chapter 268 of the Laws of 1877. Six of the leases, bought by one James Stewart July 20, 1893, were recorded August 24, 1893. The other two, purchased by one Albert N. Griffen September 20, 1890, were recorded October 7, 1890. Stewart and Griffen were defendants' predecessors in interest.

Defendants' alleged claim of title remained unbroken and their possession undisturbed until March 25, 1913, when plaintiff obtained a quitclaim deed from one Harriette K. Williams, recorded October 19, 1914, for the same eight lots. This action was not commenced until September, 1934. Plaintiff's chain of title is traceable to the owner of the land at the time the tax leases were sold by the county.

The complaint charges that the tax sale was void because the county treasurer failed to comply with the provisions of the authorizing statute. The law requires a strict conformance. (*Clason* v. *Baldwin*, 152 N. Y. 204, 210.) Plaintiff's claim for damages amounting to $125,000 covers only the six years immediately preceding the commencement of this suit. Each of the two answers interposed contains a general denial. Defendant Henry Albert Griffen raises six separate defenses. The other defendants repeat the first five of Griffen's separate defenses. This motion would eliminate all separate defenses.

I will take up these defenses in their numerical order.

The first would outlaw the suit because certain Statutes of Limitations have run against it. The limiting laws pleaded are: Tax Law, § 132; Laws of 1928, chap. 845; Laws of 1896, chap. 908; Laws of 1885, chap. 448; Laws of 1893, chap. 711; Laws of 1877, chap. 268, and Laws of 1891, chap. 217.

For the purposes of this motion the provisions found in the first three statutes above listed are the same. If any one of those statutes applies, the defense is good. Defendants in their brief state that they rely upon section 132 of the Tax Law, which reads as follows: " Every such conveyance heretofore executed by the comptroller, county treasurer or county judge and all conveyances of the same lands by his grantee or grantees therein named, which have for two years been recorded in the office of the clerk of the county in which the lands conveyed thereby are located, and all outstanding certificates of a tax sale heretofore held by the comptroller, that shall have remained in force for two years after the

last day allowed by law for redemption from such sale, shall be conclusive evidence that the sale and proceedings prior thereto, from and including the assessment of the lands, and all notices required by law to be given previous to the expiration of the time allowed for redemption, were regular and were regularly given, published and served according to the provisions of all laws directing and requiring the same or in any manner relating thereto, but all such conveyances and certificates, and the taxes and tax sales on which they are based, shall be subject to cancellation, by reason of the payment of such taxes, or by reason of the levying of· such taxes by a town or ward having no legal right to assess the lands on which they were laid, or by reason of any defect in the proceedings affecting the jurisdiction upon constitutional grounds, on direct application to the department, or in an action brought before a competent court therefor; provided, however, that such application shall be made, or such action brought in the case of all sales held prior to the year eighteen hundred and ninety-five, within one year from June fifteenth, eighteen hundred and ninety-six; and in the case of the sale of eighteen hundred and ninety-five and of all sales hereafter held, that such application shall be made, or such action brought, within five years from the expiration of the period allowed by law for the redemption of lands sold at the particular sale sought to be cancelled."

The time within which an attack for invalidity may be made upon a tax sale because in its execution the authorizing act was not adhered to, may be limited. (*Doud* v. *Hebrew Congregation of Huntington*, 178 App. Div. 748.)

Section 132 of the Tax Law (hereafter where this law is referred to " of the Tax Law " will be omitted) is a Statute of Limitations providing that a conveyance, received at a tax sale, which has been recorded for a period of two years without its validity being questioned is conclusive evidence of the regularity of the tax sale at which it was purchased. (*Peterson* v. *Martino*, 210 N. Y. 412, 415.)

Because this is a " tax lease " case, plaintiff contends that no protection is afforded by section 132 to these defendants, whose tenure is derived from that form of interest in land. In support of that argument plaintiff cites *Matter of Ritter Place* (139 App. Div. 473, 481 [1st Dept. July 7, 1910]), wherein the court said: " I think this provision must be confined to conveyances made either by the comptroller or a county treasurer under the various acts to which attention has been called, which convey to the purchaser a fee of the property and have no application to a lease made under a special statute, and are, therefore, not applicable to the tax lease upon which the petitioner here relies."

The *Ritter Place* decision holding that the Tax Law did not repeal the special law under consideration, fails to refer to *Cone v. Lauer* (131 App. Div. 193 [2d Dept. March 5, 1909]; appeal dismissed, 198 N. Y. 597), in which the ruling is contra to the former. JAXCOX, J. (2d Dept.), writing the opinion in *Cone v. Lauer* (a tax deed case) said that the Tax Law repealed special laws even though they are not listed in the repealing clause.

It would seem that the views of the First and Second Departments are opposed.

*Peterson v. Martino* (210 N. Y. 412, March 3, 1914) cleared the atmosphere but not entirely. CARDOZO, J., writing for the Court of Appeals, said that the subject of repeal of special laws by the General Tax Law has occasioned contradictory decisions. He reviewed *Bennett v. Kovarick* (23 Misc. 73; affd., 44 App. Div. 629); *Welstead v. Jennings* (104 id. 179; affd., 185 N. Y. 588); *Cone v. Lauer* (131 App. Div. 193); *Carroll v. McArdle* (157 id. 404; the reversal by the Court of Appeals in 216 N. Y. 232 will be referred to later); *Pratt Institute v. City of New York* (183 N. Y. 151); *People ex rel. Roosevelt Hospital v. Raymond* (194 id. 189, 197); *Matter of Huntington* (168 id. 399); *Matter of Troy Press Co.* (187 id. 279); *Matter of McIntyre* (124 App. Div. 66); *Kelly v. Austin* (132 id. 522); *Fulton v. Krull* (200 N. Y. 105); *Grimmer v. Tenement House Dept.* (204 id. 370, 378); *Davis v. Supreme Lodge* (165 id. 159); *People ex rel. Fleming v. Dalton* (158 id. 175); *City of New York v. Trustees Sailors' Snug Harbor* (85 App. Div. 355; affd., 180 N. Y. 527); *Matter of N. Y. Institution* (121 id. 234); *People v. Jaehne* (103 id. 182, 194); *City of Buffalo v. Lewis* (192 id. 193, 200).

At the conclusion of this dissertation (it will be noted that *Matter of Ritter Place* was not mentioned) he said (p. 419): " The subject of the repeal of the local law has been considered with this fulness in order to remove the uncertainty in which it has been enveloped." The failure of the Court of Appeals to refer to the *Ritter Place* decision has led plaintiff to believe that the *Ritter Place* holding has survived. However, the Court of Appeals in *Peterson v. Martino* said: " The true view is that the General Tax Law supplies the final and exclusive rule " (p. 416). Citing other authorities, CARDOZO, J., in that decision, holds the Tax Law " to be a ' a codifying act, designed to reduce all statutes relating to taxation into a complete and harmonious system ' and ' to exhaust the subject to which it relates ' (pp. 416, 417) (*Pratt Institute v. City of New York*, 183 N. Y. 151; *People ex rel. Roosevelt Hospital v. Raymond*, 194 N. Y. 189, 197). It has accordingly been held to override earlier statutes relating to taxation, even though the

laws thus displaced were not enumerated ' in the schedule of one hundred and fifty-three acts and parts of acts expressly repealed ' " (p. 417).

Commenting on *Matter of Troy Press*, where there was a conflict between the General Tax Law governing the publication of notices of sale (Laws of 1896, chap. 908, §§ 130, 151), and a provision of the local law regulating advertisements in Rensselaer county (Laws of 1892, chap. 512), the opinion states: " It was again held that the earlier law had been repealed by implication. The conclusion was that the provisions of the General Tax Law establish ' a complete and harmonious system of taxation and procedure,' and that they ' irresistibly lead to the inference that the Legislature intended that they should become a substitute in place of the local previously existing statutes ' " (p. 417). Again he observes: " To this end it declared a comprehensive system, superseding the scattered and fragmentary laws that preceded it. We think it important that this view of its operation be maintained. No doubt, it is necessary in any case to consider the scope and purpose of an earlier enactment involving the subject of taxation before we can determine whether the General Tax Law was intended to supersede it * * *. The determining consideration must be whether on comparison of the subject-matter of the two statutes, the one is fairly to be regarded as a revision of the other. Applying this test, we hold that the act of 1873 (L. 1873, ch. 620) was repealed by the General Tax Law " (p. 419).

Need more be said to establish the point that the Queens county special law was repealed in its entirety and for all purposes?

I have quoted freely from the opinion in *Martino* v. *Peterson,* in which five members of the court concurred, while two restricted their acquiescence to the result only. Although it dealt with a tax deed, its language permits of no inference that it excepts tax-lease cases from its effect. The statement " ' designed to reduce all statutes relating to taxation into a complete and harmonious system ' " is an all-inclusive one.

The *Peterson* v. *Martino* opinion notes an exception to the rule and holds that repeal is not worked by the General Tax Law where the charter of a city embodies a comprehensive and complete code, designed to establish a separate system of taxation, applicable to that locality. In the case of *Carroll* v. *McArdle* (216 N. Y. 232) a further exception is pointed out. (This case is reported in 157 App. Div. 404, was cited in *Peterson* v. *Martino* as an authority, holding that the General Tax Law repealed a special law enacted for Westchester county but the Court of Appeals in 216 N. Y. 232 reversed the Appellate Division.) The reversing opinion stated

that where a complete tax collection plan for the towns of a county exists, which law has been materially amended and added to by legislation, and pursuant to which plan the officials of the towns and county have continued to proceed in collecting the taxes for the community over a long period subsequent to the enactment of the General Tax Law, the general law will not repeal such special law by implication.

The latter is really not an exception. The course of conduct of the Legislature in amending and supplementing the special law thoroughly negatives the repeal-by-implication idea and the conduct of the local officials in ignoring the new general law and adhering without objection to the earlier statute, confirms that legislative intent.

The case at bar falls into neither of the exceptions referred to and no other exceptions are mentioned in any cases.

Are " tax-lease cases," therefore, to receive different treatment simply because the words " tax lease " do not occur in section 132; because they are not mentioned in the cases which hold that the Tax Law supersedes special laws and that section 132 is a Statute of Limitations, and because *Matter of Ritter Place* was not condemned by subsequent rulings of the higher court?

Plaintiff in his argument leans heavily upon that negative proposition. It may be that the reason why " tax leases " were not alluded to by the courts in the cases before them for consideration was that they were treating with " tax deeds " and there was no occasion to refer to " leases." But the principle of repeal whether it concerned a lease or a deed should be no different.

Plaintiff in his argument is driven to the retreat that merely because this is a " tax-lease case " as opposed to " a tax-deed case " wins for it immunity from the effect of the now settled law that section 132 overrides special laws and establishes a Statute of Limitations in all instances save the exceptions noted above.

Did the Legislature intend to repeal the Queens County Tax Law by piecemeal? Would it set section 132 in operation against tax deeds and still its workings as to tax leases? In *Peterson* v. *Martino* the court treated with that idea. It said: " It is not possible that the Legislature intended to repeal by implication part of the act, and to let other parts of it stand " (p. 417).

Plaintiff cited *Bennett* v. *Kovarick* (23 Misc. 73; affd., 44 App. Div. 629). This ruling was repudiated in *Cone* v. *Lauer*, which held that the same Suffolk County Tax Law was repealed by the General Tax Law which the *Bennett* case held had escaped. *Peterson* v. *Martino* refers to *Bennett* v. *Kovarick* as not expressing the " true view " and, incidentally, CARDOZO, J., declined to follow *Welstead*

v. *Jennings* (104 App. Div. 179; affd., 185 N. Y. 588), where it conflicted with the opinion. expressed.

The reason for CARDOZO, J., making no reference to *Matter of Ritter Place* in *Peterson* v. *Martino* may have been due to the fact that the case was not included in the points of counsel and it may not have been called to the court's attention. The trend of Judge CARDOZO's opinion is decidedly at variance with the view in the *Ritter Place* case.

It does not seem that the learned court responsible for the *Ritter Place* ruling caught the spirit of the Legislature when it enacted the General Tax Law.

Considering the development of the subject, the fate that befell decisions out of, harmony with that development and the plain policy of the State as expressed by the Court of Appeals to concentrate procedure for tax sales and their aftermath in one law — the Tax Law — I am satisfied that *Matter of Ritter Place* would have been distinguished by the Court of Appeals if the case had been referred to at all.

Special laws have been succumbing by court decision, with uninterrupted regularity for years, to the repealing effects of the Tax Law enacted " to supplant the earlier statutes which had become so numerous and confusing that they could with difficulty be collated." (*Peterson* v. *Martino*, p. 419.) No substantial reason has been advanced showing why the Queens County Tax Law should have survived that judicial onslaught. Chapter 268 of the Laws of 1877, the act under which these leases were sold, in my judgment gave way and was supplanted by the General Tax Law. The two-year limitation contained in section 132 applies to the sale of the leases in the case at bar.

The first defense is good. The Statute of Limitations as set forth in section 132 is a bar to this action.

The second defense is good. Defendants plead title by adverse possession. That is an inconsistent theory as compared with a tenancy as alleged in the first defense. But inconsistency in answering is not forbidden. It is recognized (*Carter, Macy Co.. Inc.,* v. *Matthews,* 220 App. Div. 679; affd., 247 N. Y. 532). If defendants fail in their first line of defense, they may fall back upon the next line although that be based upon a wholly different theory, to the end that an unjust claim be defeated.

The third defense is good. Defendants' plea is: At the time they acquired the quitclaim deed and between that time and the commencement of this action, plaintiff knew of important happenings concerning this property, amounting to a clear exercise by defendants of the rights of ownership of it, and suffered the same to

proceed without protesting — a silence under the circumstances that now estops him from asserting any title that he may have to the land. The administration of justice would suffer irreparably if the court could furnish no relief under the conditions recounted in *Levinson* v. *Myers* (100 Misc. 379), where it was held that the force of estoppel was applicable. The case at bar approaches a parallel of the *Levinson* case.

The fourth and fifth defenses are good. Plaintiff's objections to them are the same as he made to the second defense. They are again overruled.

The sixth defense is good. While a joint or common owner may maintain an action in ejectment, his recovery in damages is restricted to "his or their undivided shares." (Civ. Prac. Act, § 993.) Defendants intend to show that there are others interested. If that fact is established, this complaint, which demands full damages, would permit plaintiff to collect money not only for damage to his interest but also for the damage done to the interest of his joint or common tenants, and nothing could stop the latter from suing in additional separate actions and recovering again.

The motion in all respects is denied.