[No. 11600.   Department One. — July 1, 1887.]

ELIZA CADWALADER, EXECUTRIX, ETC., OF GEORGE CADWALADER, DECEASED, RESPONDENT, v. JOSEPH NASH ET AL., APPELLANTS.

SHERIFF'S DEED — DESCRIPTION OF LAND — REFERENCE TO MAP — UNCERTAINTY — EVIDENCE OF IDENTITY. — A sheriff's deed of land sold at an execution sale, which describes the property intended to be conveyed solely by a general reference to a non-official map, in order to be operative must clearly identify the particular map referred to; and the deed is void for uncertainty, when the reference contained therein is equally applicable to two different maps, and in an action founded thereon, parol evidence of the sheriff to identify the one referred to is inadmissible.

ID. — TAXATION — TOWN LOTS — ASSESSMENT OF MUST BE SEPARATE — RETURN TO ASSESSOR. — Under section 3650 of the Political Code, town lots must be separately listed and valued for purposes of assessment, according to the system of numbering obtaining in such towns; and an assessment of several lots as one undivided parcel is void, if the owner thereof did not return them to the assessor as a whole, and did not refuse to make a return.

APPEAL from a judgment of the Superior Court of San Diego County, and from an order refusing a new trial.

The facts are stated in the opinion of the court.

*M. A. Luce, Philip G. Galpin,* and *Works & Titus,* for Appellants.

*Levi Chase,* for Respondent.

PATERSON, J.—Action to quiet title. Plaintiff is the executrix of the last will and estate of George Cadwalader, deceased. On July 25, 1877, and thereafter to December 20, 1877, defendant Nash was the owner of the property in controversy, except a few lots that he had conveyed to Phillips. In July, 1877, Frank Johnson commenced an action against Nash, and on July 25, 1877, caused an attachment to be levied on the property mentioned in the complaint. Thereafter, Johnson

recovered judgment therein, execution was issued, and certain property sold thereunder, which plaintiff claims included the property in controversy. Some of the lots numbered in the complaint are described as being in the "right of way *through Middletown,* all according to a map filed in the partition of said *Middletown property* in the case of *Baldwin* v. *Couts;* decree recorded October 24, 1874, in book 4 of miscellaneous records of said county." And in the findings they are described substantially in the same way.

The return of the sheriff on the execution, and also the sheriff's deed, admitted in evidence against the objections of appellant, describe the premises sold as follows: "Lots number [giving the numbers], and blocks number [giving the numbers], all described according to the *Commissioner's Map of Middletown,* on *file* in the office of the *recorder* of San Diego County," etc.

The respondent, in order to identify the property described in the sheriff's deed, introduced in evidence a map marked "Exhibit A," and commonly called the "Referee's Map," or "Jackson Map." This map is designated as "Referee's Map," and not as "Commissioner's Map," and was filed in the county clerk's office, and not in the recorder's office, and was indorsed, filed by the clerk of the District Court. At that date, and for a long time thereafter, the office of clerk and recorder was held by the same person, to wit, A. S. Grant. He was clerk and *ex officio* recorder of the county; the business of the two offices was done in the same room in the courthouse, and the maps were kept together in the same drawer in that office. There was also in evidence another map of Middletown known as the "Pascoe Map," and indorsed "John B. Mhoon, Referee." This map is also marked as an exhibit in *Baldwin* v. *Couts,* and filed by the clerk August 3, 1869. It was found in the recorder's office, with his tag attached to it, and was with the rest of the maps in that office. This exhibit shows

the described lots and blocks to be situated in different
parts of Middletown from those shown by the Jackson
map.

The court being in doubt as to which map was de-
scribed in the deed, from the words of the deed, and
consequently being uncertain what lots the deed de-
scribed, permitted parol proof to be introduced. The
sheriff was called to testify as to the map, and under
objection said: "We took a traced copy of the map
before starting out with the surveyor. *This* is the map
I referred to in the deed as the ' Commissioner's Map.'
This is the map we used," referring to exhibit A. It is
claimed by appellant "that by parol proof the court
undertook to find out where the premises were, which
ought to have been, but were not, described in the con-
veyance. This is simply to pass the title to land, by
*parol*, for without this proof the land could not be iden-
tified. The deed alone did not describe it, and for this
error a new trial should be granted."

1. Where a deed refers in general terms to the *official*
map of a town, parol evidence is admissible to identify
the map which has been officially declared to be the
town map, and the fact that a particular reference in
the deed to the survey, and to the surveyor who made
the map, does not literally accord with the indorsement
on the map is immaterial. (*Penry* v. *Richards*, 52 Cal.
496.) In all cases where the deed refers to a map or
instrument in writing, the latter is regarded as incor-
porated in the deed as a part thereof. (*Vance* v. *Fore*,
24 Cal. 435.) The deed and the map or instrument,
however, when taken together, must be as certain in
respect to the description as a description contained in
the deed itself, and the identity of the map referred to
must be clearly established. When the deed itself con-
tains a sufficient description of the land, so that it can
be identified without resorting to the map to ascertain
its locality, it is not necessary for the party introducing

the deed in support of his title to produce the map in connection with it, but when — as in the case at bar — the land is incapable of identification without reference to *some map*, the map referred to in the deed is as essential as the deed itself. Accordingly, it has been held that a deed which describes the land conveyed as "Lot No. 1 in the subdivision of the tract of land lying on the new county road, and known as Foley's tract, the map of which is duly recorded in the recorder's office," does not, when taken alone, contain a description, sufficient to attach itself to any particular tract of land without the aid of further evidence. (*Caldwell* v. *Center*, 30 Cal. 539; S. C., 89 Am. Dec. 131.) In that case the court held that a map pasted between the leaves of the recorder's book was not admissible in evidence with the deed to identify the land, because not recorded. In *Brandon* v. *Leddy*, 67 Cal. 43, the deed did not show whether the lot described was north or south of the base line established by the official map, and although it was shown that the grantor never owned any lot south of the base line, the court held that the deed itself should show the situation of the lot, and as the ambiguity was patent, resort could not be had to parol.

In the case at bar it was not shown whether there was a base line with blocks and lots of corresponding numbers on each side of the line, but the two maps in evidence represent blocks and lots of corresponding numbers as being situated in different parts of Middletown. Thus, for instance: Exhibit A represents block 96 as situated six blocks north of California Avenue, while exhibit B shows that it is only two blocks north of the avenue; and block 150 is represented on map A as being six blocks north of California Avenue, while on map B it is situated one block south of the avenue. Which map is correct? Both are referee's maps, in different cases it is true, but of the same title, between the same parties, and for the same purpose, — partition of

lands. If it be conceded that "Commissioner's Map of Middletown" is equivalent to "Referee's Map," the fact remains that exhibit B answers the description as well as exhibit A. Both maps were used in suits between the same parties for the same purpose, and neither of them was ever filed with the county recorder. They were both marked as exhibits in civil cases pending in the District Court, were filed therein by the clerk thereof, and the clerk did not and could not lawfully make them a record of any other office. If the fact that the clerk and *ex officio* recorder kept the records of both offices in the same room be material at all, it would tend to show that the map upon which he put a tag, showing it to be among the records of the recorder (exhibit B), was the map referred to by the sheriff in his deed as "Commissioner's Map of Middletown, on file in the office of the recorder of said county of San Diego."

The fact that map B contains a plat of only a portion of the blocks and lots numbered in the deed of the sheriff, and that map A contains what appears to be a full plat of Middletown, might, under some circumstances, be pertinent and forceful, but in view of the other facts here shown cannot avail the respondent. The deed introduced in evidence to support the title of the estate to these particular lots in controversy described the premises as above quoted, while the complaint, findings, and decree herein, in describing them, read: "All according to the map filed in the partition of said Middletown property in the case of *Baldwin* v. *Couts.* Decree recorded October 24, 1874, in book 4 of miscellaneous records of said county." The record shows that the description of the land intended to be conveyed is not complete and certain without reference to a map. No one could find it without the map. The sheriff himself in making the levy found the property only by using the map and making a survey. Against the objection of the defendant he was allowed to testify: "We took a

traced copy of the map before starting out with the sur-
veyor.    This is the map [exhibit A] I referred to in the
deed as the 'Commissioner's Map.'   This is the map we
used."   Without this testimony, the court could not have
found that the property conveyed or intended to be con-
veyed by the sheriff was shown by "the map filed in
the partition of the said Middletown property in the
case of *Baldwin* v. *Couts,*" etc.    That this testimony was
inadmissible, we think there can be no doubt.    (*Mason*
v. *White,* 11 Barb. 175.)

The contention of the respondent that, as Nash was
a party to the proceedings in which the execution was
issued, he is presumed to have known all that was done
by the sheriff, and if there was any irregularity detri-
mental to his interests, he should have applied to the
court to set aside the sale, and having failed to do so,
the purchaser took all the title Nash held, cannot be
maintained.

Of course, in judicial sales, where the court acts di-
rectly upon the property sold, the deed can be made to
conform to the true description of the thing sold, and
the rules applicable to sales between man and man to a
great extent apply; but not so in case of execution sales.
Freeman on Executions, in section 281, says: "The ob-
ject of the advertisement is to give notoriety to the pro-
posed sale, so that all persons may understand what it is
that is to be sold.    No one will bid unless he can know
what he is bidding for.    The rights of the defendant
must necessarily be sacrificed, unless the thing to be sold
is made certain.    People may refuse to bid, or after suc-
cessful bidding may claim more than the officer intended
to sell.    So the deed ought to be free from ambiguity."
Freeman on Executions, section 330: "Hence a descrip-
tion from which the lands intended to be transferred
can be located is indispensable to the validity of the
deed."

Our conclusions upon this branch of the case, therefore,

are,—1. That the court erred in admitting the testimony of the sheriff; and 2. That without this testimony the evidence does not support the allegations of the complaint, or the findings of the court relating to the Middletown lots.

It is admitted that there is no uncertainty in the sheriff's deed as to the east one half of pueblo lots 1126 and 1127, and the only question in relation to those lots is as to the validity of the tax deeds under which defendant claims title thereto.   In June, 1873, Nash, for a valuable consideration, conveyed to Phillips certain lots and blocks of land, the same being a portion of the east one half of pueblo lot No. 1126, and Phillips reconveyed the same to Nash by deed dated December 13, 1883.   As there was no uncertainty in the sheriff's deed so far as these two pueblo lots were concerned, the defendant's interest in every portion thereof not previously conveyed to Phillips passed to Cadwalader by virtue of the sheriff's levy, sale, and deed under execution, and defendant's title thereto, if he has any, is derived from the tax deed.

. It appears from the findings of the court that these pueblo lots are large lots containing several acres, and that they are subdivided into a large number of smaller lots designated upon the map by numbers.   The decree adjudges Nash to be the owner of over 150 subdivisions, being a portion of the east one half of one pueblo lot alone, giving the number of each block and lot.   The map showing these subdivisions was made by the city engineer in 1870.

The assessor did not assess the lots, nor even the block separately, but assessed the east one half of lot 1126 as one undivided parcel.   This, we think, could not, under the law, be done.   "The assessor must prepare an assessment-book, . . . . in which must be listed all property within the county, and in which must be specified in separate columns under the appropriate head: . . . .

3. City and town lots, naming the city or town and the number of the lot and block, according to the system of numbering in such city or town, and improvements thereon; 4. All personal property, showing the number, kind, amount, quality; but a failure to enumerate in detail such *personal* property *does not invalidate the assessment.*" (Pol. Code, sec. 3650.) Under the revenue act of 1861, it was held that where *one man owned and returned* a whole block or half block, the assessor might list and value it as a whole. (*People* v. *Morse*, 43 Cal. 541; *People* v. *Culverwell*, 44 Cal. 620.) Since the decisions in these cases, the duty of the assessor has been made more specific and imperative, as will be seen by a comparison of section 20 of the revenue act of 1861 with the provisions of section 3650 of the Political Code. Of course, where the owner himself returns the property as a whole, he cannot be heard to complain that it has been improperly listed in that manner; but where, as in this case, no return was made by the owner, and there is nothing to show that the owners of the property refused to make a return to the assessor, we are bound to say that the assessment is void, or to hold that the imperative language of section 3650 is simply directory, unimportant, and that the assessor may regard it or disregard it at will. We think that the rule prescribed is based upon reason, and should be followed. Several parties may own different portions of a pueblo lot, divided into city blocks containing several hundred well-known lots. An owner of one lot, who is a non-resident, would be required, if his lot be assessed as this lot was, to pay the tax on the whole property to save his own from tax sale, and this without any fault of his own. There is no way of ascertaining what proportion of the whole tax any particular lot-owner should pay, and of course the tax-collector will accept nothing less than the full amount of the tax.

That the assessor is bound to assess in subdivisions

is apparent also from other provisions of the code, which relate to assessment and sale. Thus he is required to exact from each person, under oath, a statement showing separately, — "5. An exact description of all lands in parcels and subdivisions." "When the assessor has not received from the owner of a tract of land the statement required by section 3629, or when such statement does not sufficiently describe a tract of land to enable the assessor. to assess the same as required by law, . . . . he shall cite such owners to appear," etc. (Sec. 3634.) The form of the assessment-book is prescribed, in which one column is for "real estate other than city and town lots," and half-columns for, "range E. or W.," "township N. or S." "section"; "subdivision of section." Also a column for "city or town lots," with half-columns beneath for "block," "lot," and "fraction." (Sec. 3651.) The supervisors must provide for the assessor maps of cities and villages. (Secs. 3658, 3659.) The tax-collector must commence the sale at the head of the list, and continue alphabetically, or in the numerical order of lots and blocks, until completed (sec. 3771), and the owner has the right to designate what particular parcel he wishes sold, if less than the whole. (Sec. 3773.)

We think, therefore, that the court below was right in its conclusion that the assessment, sale, and deed affecting the pueblo was void.

Appellant requests that the court below be directed to enter judgment in his favor for the Middletown lots, but this request cannot be granted. The evidence on another trial may show a state of facts entirely different from those shown in this record.

Judgment and order reversed, and cause remanded for a new trial.

McKINSTRY, J., and TEMPLE, J., concurred.