Appeal from Municipal Court, Borough of Manhattan, Fifth District.

Action by Dan Talmage's Sons Company against Solomon Epstein. Judgment for plaintiff, and defendant appeals. Reversed.

Argued February term, 1913, before SEABURY, GERARD, and BIJUR, JJ.

Nathan Bardach, of New York City, for appellant.

Charles O. Maas, of New York City, for respondent.

═══════════

(155 App. Div. 236.)

## VENTIMIGLIA v. EICHNER.

(Supreme Court, Appellate Division, First Department. February 21, 1913.)

1. QUIETING TITLE (§ 7*)—RIGHT OF ACTION—TAX LEASE.

A tax lease, apparently executed in conformity with Greater New York Charter (Laws 1901, c. 466) § 1041, which provides that such leases shall be presumptive evidence of the regularity of the tax sale proceedings, and that the purchaser shall in virtue thereof hold the lands until the end of his term, creates a cloud upon the title of the land, and an action to remove the same may be maintained.

[Ed. Note.—For other cases, see Quieting Title, Cent. Dig. §§ 14–33; Dec. Dig. § 7.*]

2. TAXATION (§ 442*)—ASSESSMENT ROLL—OWNER—PRESUMPTION.

Since under Greater New York Charter (Laws 1901, c. 466) § 910, and Tax Law (Laws 1896, c. 908) §§ 29, 30, the name of a nonresident owner need not be inserted in the assessment roll, the presumption, when a name is inserted in the roll, is that the owner is a resident.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 774–780; Dec. Dig. § 442.*]

3. TAXATION (§ 437*)—ASSESSMENT ROLL—VALIDITY—NAME OF OWNER.

The only effect that an error in, or the omission of, the name of the owner in an assessment roll in the city of Greater New York, is to confine the enforcement of a tax to the property against which it is assessed and to relieve the owner from personal liability therefor.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 766, 767; Dec. Dig. § 437.*]

───────────────

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

4. TAXATION (§ 301*)—COMPLIANCE WITH STATUTORY REQUIREMENTS—NECESSITY.

The statutory requirements should be strictly followed in levying taxes and assessments and selling land therefor, and the court cannot as a rule declare any statutory proceeding immaterial on the ground that the owner has not been prejudiced by failure to comply with it.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 483–495, 499–508; Dec. Dig. § 301.*]

5. TAXATION (§ 442*) — COMPLIANCE WITH STATUTORY REQUIREMENTS — PRESUMPTION—EVIDENCE.

The statutory presumption of the validity of an assessment roll is overcome on the production of the assessment roll or other evidence showing that any statutory requirement has not been complied with.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 774–780; Dec. Dig. § 442.*]

6. TAXATION (§ 421*)—DESCRIPTION OF PREMISES—SUFFICIENCY.

Premises must be described for the purpose of taxation or assessment with sufficient definiteness to enable all persons interested to ascertain by examining the roll, or inquiring at the proper office, what lands are assessed, and to identify them with sufficient particularity to enable the purchaser to take possession.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 720–727, 729–735; Dec. Dig. § 421.*]

7. TAXATION (§ 421*)—ASSESSMENT ROLL—DESCRIPTION OF PROPERTY—SUFFICIENCY.

An assessment roll, which omitted a definite description and merely substituted therefor the letters "H & L" under the heading "Description of property," was at fatal variance with a description of the premises, as reported by the deputy tax commissioner, showing that there was a frame house three stories high thereon and giving its dimensions.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 720–727, 729–735; Dec. Dig. § 421.*]

8. TAXATION (§ 421*)—ASSESSMENT ROLL—DESCRIPTION OF PROPERTY—SUFFICIENCY.

An assessment roll, describing improved property in respect to its improvements merely by the insertion of the letters "H & L" under the heading "Description of property," did not even substantially comply with the requirements of Greater New York Charter (Laws 1901, c. 466) §§ 889, 1027, requiring that the description show whether and how the premises are improved.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 720–727, 729–735; Dec. Dig. § 421.*]

9. TAXATION (§ 658*)—NOTICE OF SALE—DESCRIPTION OF PROPERTY—SUFFICIENCY.

A notice of tax sale published by the collector of assessments and arrears, which purported to describe the property but did not indicate whether or not the lot was improved, was insufficient to comply with Greater New York Charter (Laws 1901, c. 466) § 1027, requiring that a particular and detailed description of the property be appended to the notice, though it referred for further information, on matters other than the description, to a pamphlet on file which may have completely described the property.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1332–1335, 1339; Dec. Dig. § 658.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

Appeal from Special Term, New York County.

Action by Maria J. Ventimiglia against Minna Eichner, as administratrix, etc. From a judgment dismissing the complaint, plaintiff appeals. Reversed, and new trial granted.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

G. Arnold Moses, of New York City, for appellant.

A. Stephen Aaronstamm, of New York City, for respondent.

LAUGHLIN, J. This is an action to remove a cloud upon title to real property, created by a lease for 1,000 years given on a sale of premises for the nonpayment of certain taxes and water rents. The tax sale took place on the 10th day of October, 1906, and was for the unpaid annual taxes for the years 1900 and 1901, and the unpaid water rents for the years 1899 and 1900, which were added to the assessment rolls for the succeeding years respectively. The total amount of the taxes and water rents, with accrued interest and other additions, for which the sale was made, was $179.71. The plaintiff was the owner in fee of the premises at the time of the sale, having acquired title thereto by a warranty deed from the former owner bearing date the 10th day of February, 1906, and duly acknowledged on the 13th day of the same month. The consideration recited in the deed is $7,-000. The premises are described in the conveyance as a certain lot, piece, or parcel of land, with the building thereon, in the 23d ward of the borough of the Bronx, city of New York, beginning at a point on the westerly side of Nelson avenue 275.76 feet southerly from the southwesterly corner of said avenue and 167th street, and running thence westerly parallel with 167th street 107.83 feet, and thence southerly parallel with Ogden avenue 25 feet, and thence easterly parallel with 167th street 105.98 feet to the westerly side of Nelson avenue, and thence northerly along the westerly side of said avenue 25.07 feet to the place of beginning.

[1] The defendant concedes that she claims the right of possession of said premises by virtue of the tax lease. Section 1041 of the Greater New York Charter (Laws 1901, c. 466) provides that tax leases executed by the comptroller of the city and witnessed by the collector of assessments and arrears pursuant to the provisions of statutory law applicable thereto "shall be presumptive evidence that the sale and all proceedings prior thereto, from and including the assessments on said lands and tenements, for taxes or assessments or water rents, and all notices required by law to be given previous to the expiration of the two years allowed to redeem, were regular and according to the provisions of the statute in such cases made and provided," and that the "purchaser or purchasers, his, her or their heirs, executors, administrators, or assigns, shall, in virtue thereof and of this title, lawfully hold and enjoy the said lands and tenements in said lease mentioned for his, her, or their own proper use against the owner or owners thereof, and all claiming under him, her or them, until such purchaser's term therein shall be fully complete and ended." The tax lease was apparently executed in conformity with these provisions.

and, in view of the presumption created by the statute, it is a cloud upon the title, and an action to remove the same may be maintained.

By the decision, from which the appeal is taken, the tax sale and lease have been declared to be valid. The appellant assails their validity upon numerous jurisdictional grounds; but, in the view we take of the case, it will only be necessary to consider those relating to the description of the premises and the form of the assessment rolls and notice of sale.

It was held by this court in People ex rel. Lazarus v. Feitner, 65 App. Div. 318, 73 N. Y. Supp. 97, affirmed 169 N. Y. 604, 62 N. E. 1099, that, in determining the validity of the *annual record* of the assessed valuation of real and personal estate of the borough of Manhattan, the general statutes of the state and the provisions of the Greater New York Charter are to be construed together; but that, in so far as the Charter contains special provisions, they are controlling. See, also, on this point, People ex rel. Zollikoffer v. Feitner, 34 Misc. Rep. 299, 69 N. Y. Supp. 793, affirmed 63 App. Div. 615, 72 N. Y. Supp. 1124, and 168 N. Y. 674, 61 N. E. 1133, and Franklin v. Pearsall, 53 N. Y. Super. Ct. 271. By virtue of the provisions of section 889 of the Charter as it existed at the time the assessments in question were made, it was the duty of the deputy tax commissioners, under the direction of the board of taxes and assessments, among other things:

"To assess all the taxable property in the several districts that may be assigned to them for that purpose by said board, and they shall furnish to the said board, under oath, a detailed statement of all such property, showing that said deputies have personally examined each and every house, building, lot, pier, or other assessable property, giving the street, lot, ward, town and map number of such real estate embraced within said districts, together with the name of the owner or occupant, if known (also, in their judgment, the sum for which said property under ordinary circumstances would sell)."

Section 890 of the Charter provided, among other things, that the books, maps, assessment rolls, files, and records pertaining to the department of taxes and assessments of the city of New York, as it existed prior to the creation of the city of Greater New York, should be delivered to the department of taxes and assessments as constituted by the Charter, to be kept as public records. Section 892 provided that there should be kept in the several offices established by the department of taxes and assessments, among which was one in the borough of the Bronx, "books to be called 'the annual record of the assessed valuation of real and personal estate of the borough of ——,' in which shall be entered in detail the assessed valuations of such property within the limits of the several boroughs of the city of New York, as established by this act; which said books shall be open for examination and correction from the second Monday in January until the first day of May, in each year; but on said last mentioned day the same shall be closed to enable the board of taxes and assessments to prepare assessment rolls of the several boroughs for delivery to the municipal assembly."

It will be observed that it is not expressly provided by these statutory provisions that the detailed statement furnished by the deputy

tax commissioners to the board of taxes and assessments, pursuant to the provisions of section 889, shall constitute the "annual record of assessed valuation" required by the provisions of section 892 to be kept in the several offices. The record on this appeal indicates, however, that the practice is to so regard it, for each of the certified copies of "the record of the assessed valuation" of the premises in question for the years 1900 and 1901, offered and received in evidence, contains an affidavit made by a deputy tax commissioner stating, among other things, "that the foregoing book contains a detailed statement of all the taxable real property in volume 5, section 9, in the borough of the Bronx, in the city of New York, being the district assigned to me by the commissioners of taxes and assessments of the city of New York for assessment under their direction," and that he has "personally examined each and every house, building, lot, pier, and other assessable property within said district," and that "in said book is set down and given the street, block, and ward map numbers of said real estate within said district, together with the name of the owner or occupant thereof, so far as the same are known; and also in my judgment, the sums for which said property under ordinary circumstances would sell, with such other information in detail as the said commissioners have from time to time required." The book, to which the affidavit of the deputy tax commissioner relates, so far as offered in evidence, for the year 1900, is as follows:

City of New York, Borough of the Bronx, Section 9, Volume 5, Map 6
Block No. 2514

| Owner or occupant | Description of property | | | | Street No. | Ward lot or map No. | Value of real estate | Corrected amount | Remarks |
| | Size of lot | Size of house | Stories high | Houses on lot | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | Ogden to Nelson Ave., 166″ | | | to 167″ | St. | | | | |
| Unknown | $50^{14}$ x $107^{83}$ | $19^{6}$ x 37 | 3 | 2 F. | | 72 | ·3600 | | |

For the year 1901, the annual record of assessed valuation, according to the affidavit of the deputy tax commissioner, was the same, with the exception that in the column headed "owner or occupant" appeared "A. M. Smith," instead of the word "Unknown" and the column headed "Street No." was entirely omitted, and, instead of the words "Ogden to Nelson Ave., 166″ to 167″ St.," were the words "Nelson Ave., West Side." There was a house on the premises in question described in the evidence as "a semidetached two-story and basement house. Three-story and cellar house," which was built for one family and changed into a two-family house, and it was 36 feet 4 inches in depth and 19 feet in width. Section 907 of the Charter requires the board of taxes and assessments, on the 1st of May in each year, to cause to be prepared "from the books of annual record of assessed valuations" in the several offices of the department "assessment rolls for each of said several boroughs," and to annex to each of

the rolls "their certificates that the same is correct in accordance with the entries in said several books of record"; and provides that the rolls so certified must be delivered to the municipal assembly on the 1st of July in each year. Section 909 of the Charter prescribed the manner in which the annual taxes shall be computed and "set down or extended in the several assessment rolls," as required by section 910, which provides that this must be done "in a fifth column, to be prepared for that purpose in the assessment rolls, opposite to the several sums set down as the valuation of real and personal property." The fifth column was not provided in the assessment rolls for the borough of the Bronx, for the years in question, for the insertion of the tax; but an eighth column was provided for that purpose, and in said assessment rolls the description of the premises did not conform to the description contained in the annual record of assessed valuation.

It is quite evident that the Legislature intended that the form of the assessment roll should conform to the requirements of the general tax law of the state, excepting in so far as special provisions to the contrary are to be found in the Charter, or in local laws, for we find no express provision prescribing the form of the assessment rolls in the city and county of New York, excepting said provision in section 910 of the Greater New York Charter, which requires that the amount assessed against real estate and for personal estate shall be "set down in a fifth column, to be prepared for that purpose," as already stated, which provision had its origin in section 25, c. 121, Laws 1850, and was continued (see Laws 1871, c. 573, § 3) until it was re-enacted by section 832 of the Consolidation Act (Laws 1882, c. 410). At the time of the enactment of said chapter 121 of the Laws of 1850, which was the origin of this provision, the Revised Statutes prescribed the form of assessment rolls to be prepared by the assessors of each town or ward, and with respect to residents of the town or ward prescribed a roll containing four columns to be filled in by the assessors (R. S. pt. 1, c. 13, tit. 2, art. 2, § 9), and a fifth column in which the tax was to be set down by the board of supervisors of each county (R. S. pt. 1, c. 13, tit. 2, art. 3, § 33).

[2, 3] In the case at bar it does not appear whether the owner of the premises in question at the time the taxes were levied was a resident or a nonresident of the borough of the Bronx. It is not to be presumed that the owner was a nonresident, for, if he were, no name should have been inserted in the assessment roll (Greater New York Charter, § 910; sections 29 and 30, Tax Law, being c. 908, Laws of 1896; and Franklin v. Pearsall, supra); and in the city of Greater New York, the only effect that an error in, or the omission of, the name of the owner, which is only required to be inserted where he is a resident, is to confine the enforcement of the tax to the land against which it is assessed and to relieve the owner from personal liability therefor. Haight v. Mayor, etc., City of New York, 99 N. Y. 280, 1 N. E. 883; Greater New York Charter, § 894. See, also, People ex rel. Lazarus v. Feitner, supra.

In the roll for 1901, under the heading "Owner or occupant," appears "A. M. Smith apportionment 9/164," and in the roll for 1900,

under the heading "Description of property," appears "H & L," and in the roll for 1901 the same appears twice, and in a column headed "Lot No." in the roll for 1900 appears "72, 72 of 72," and in the roll for 1901 the figure 72 appears in a square and below it appears "72 of 72." Each roll contains columns headed respectively "Street No.," "Avenue," and "Street," and all of these columns were left blank. The roll for 1900 contains the following heading:

"Assessment Roll of Real Estate in the Borough of the Bronx the City of New York, Sec. 9, Vol. 5, Blocks 2842 to 2542, year 1900.

"Section 9, Volume 5, Block No. 2514 Between Ogden and Nelson Avenues Between 165th & 167th Streets."

And the roll for 1901 contains the following heading:

"Assessment Roll of Real Estate in the Borough of the Bronx, the City of New York.                                                    1901.

"Sec. 9, vol. 5, blocks 2842–2542

"Assessment Roll of Real Estate City of New York Section 9 Volume 5 Block 2514 Between Nelson & Ogden Avenue Between 165 and 167 Street.
                                        "Nelson Ave.    West Side."

[4, 5] In levying taxes and assessments and selling land therefor, the rule is that the statutory requirements must be strictly followed, and the court is not at liberty to declare any act, step, or proceeding required by the Legislature, to be immaterial on the ground that the owner has not been prejudiced by the failure to comply therewith; and the presumption of validity created by the statute in the first instance is overcome on the production of the assessment roll, or final action, or other evidence, showing that any statutory requirement has not been complied with. Matter of Ritter Place, 139 App. Div. 473, 124 N. Y. Supp. 351, and People ex rel. Nat. Park Bank v. Metz, 141 App. Div. 600, 126 N. Y. Supp. 986.

[6] It is also a well-settled rule of law that premises must be described, for the purpose of taxation or assessment, with sufficient definiteness to enable the owner and all persons interested therein to ascertain by examining the roll, or inquiring at the proper office, what lands are assessed, and to identify them with sufficient particularity to enable the purchaser to take possession thereof. People ex rel. Nat. Park Bank v. Metz, supra.

[7, 8] The description of the premises, as reported to the board of taxes and assessments by the deputy tax commissioner, shows that there was a frame house, three stories high, thereon, and gives its dimensions with substantial accuracy. In preparing the assessment roll, this definite information was all omitted, and the only substitute therefor was the insertion of the letters "H & L" under the heading "Description of property." We know of no law recognizing the use of such abbreviations to describe a house and lot, and certainly they fall far short of describing a three-story frame house of a specified length and width. A proper description of the property requires that the proceedings by which a tax is levied and enforced by sale show whether and how the premises are improved. See sections 889 and 1027, Greater New York Charter, and Smith v. Walker (Super. Ct.) 4 N. Y. Supp. 632. The only authority for the description contained

140 N.Y.S.—26

in the assessment rolls—with the exception of lands owned by non-residents—upon which the taxes were spread, and which constituted the authority for the tax sale, was the description contained in the annual record of assessed valuations, for the assessment rolls were, by the provisions of section 907 of the Charter, required to be prepared from said annual record. It needs no argument to show that the description in the assessment rolls, upon which the taxes were spread, does not conform, even substantially, to the description contained in the annual record of assessed valuations.

[9] Section 1027 of the Charter requires the notice of sale, to be published as therein prescribed, to contain:

"Appended to said notice, a particular and detailed statement of the property to be sold for taxes, assessments or water rents; or the said detailed statement and description, instead of being published in the city record and the corporation newspapers, shall, at the option of the said comptroller, be printed in a pamphlet, in which case copies of the pamphlet shall be deposited in the office of the said collector, and shall be delivered to any person applying therefor. And the notice provided for in this section to be given of the sale of houses and lots and improved and unimproved lands shall also state that the detailed statement of the taxes, assessments, or water rents, and the ownership of the property taxes assessed and on which the water rents are unpaid, is published in the city record and the corporation newspapers, or in a pamphlet, as the case may be, and that copies of the pamphlet are deposited in the office of the said collector, and will be delivered to any person applying for the same. No other notice or demand of the tax, assessment or water rent shall be required to authorize the sale of any lands and tenements as hereinbefore provided."

The notice of sale published by the collector of assessments and arrears pursuant to the provisions of section 1027 described the premises by block and lot numbers, and as being on the west side of Nelson avenue, between 166th and 167th streets; but it contained nothing indicating whether or not the lot was vacant or improved. There was published with the notice of sale what purported to be a description of the property, as already stated, together with the name of the person to whom it was assessed and the amount of the taxes and water rents unpaid; but the notice contained a further provision that:

"A detailed statement of such taxes and water rents and the ownership of the property taxed and on which such taxes and water rents remain unpaid, is published in a pamphlet, and that copies of the said pamphlet are deposited in the office of the collector of assessment and arrears in the boroughs of Manhattan and the Bronx, and will be delivered to any person applying for the same."

If there had been no attempt to describe the property in the notice of sale, it would become necessary to decide whether the provision of section 1027 of the Charter, which authorized a sale on a notice of sale containing no description of the property, but referring to a pamphlet on file, would be valid; but any person reading the notice that was published in the case at bar would not be required to consult the pamphlet to discover whether or not it contained a more complete description, because the notice itself purported to contain a description. The pamphlet which was referred to in the notice of sale was not introduced in evidence; but it is manifest that it could not, in any

event, legally have contained a more complete description than was contained in the assessment roll which was the only basis for it.

We are of opinion, therefore, that the taxes, assessments, sale, and lease are invalid, for the reasons that the property was not entered in the assessment roll by substantially the same description as that contained in the annual record of assessed valuations, or with sufficient definiteness; that the roll was not prepared and the taxes were not spread in the column of the roll required by statute; and that the notice of sale, in view of the description attempted to be given thereby, was insufficient.

The record contains no decision, but we deem it our duty to express our view on the merits, to the end that the action may be speedily and properly decided.

It follows that the judgment should be reversed, and a new trial granted, with costs to appellant to abide the event.   All concur.