THE RUDOLPH WALLACH COMPANY, Respondent, *v.* ROBERT J. ROONEY and EMMA M. DEMPSEY, Appellants, Impleaded with CLARENCE M. ROONEY and Others, Defendants.

First Department, April 20, 1917.

Municipal corporations — city of New York — validity of assessments under chapter 542 of the Laws of 1892 — judicial notice of designation of land for taxation — remedy of owner whose lot has been divided.

Under chapter 542 of the Laws of 1892, providing for a system of assessment in the city of New York by section, block and lot number, a statement of the true name of the owner or the occupant is not necessary to the validity of the assessment.

One of the purposes of said statute is to obviate the necessity of setting forth on the tax rolls a detailed description of the real property assessed.

The court will take judicial notice of the designation of land in the city of New York for purposes of taxation and assessment by its section, block and lot number.

A claim that no personal examination of each house was made by the deputy commissioner because the size of the house was reported as "16.8x40," whereas there were two separate houses, does not invalidate the assessment, where the deputy furnishes an affidavit that he did make a personal examination, and both the annual records and the assessment rolls clearly indicate that there were two houses.

The statute does not require that the annual record shall disclose the existence of buildings or structures upon the lot or their value.

The provision of the statute for a separate statement of the value of property unimproved is directory and intended merely to instruct and guide the assessing officers, and the failure to comply therewith does not render the assessment or tax invalid.

Where the lot number and street number are stated, the assessment is not invalid upon the ground that the abbreviation "H & L" does not suf-

ficiently describe two separate houses, as neither the owner nor the public would be uninformed or misinformed as to the precise property assessed.

An assessment is not invalid because no separate value was stated for each parcel of the lot on which two separate houses stood.

An application for a change in the tax maps by dividing the property, should be made to the board of taxes and assessments. and not to a deputy tax commissioner.

The remedy of an owner of a portion of a lot which has been divided is to discharge his proportionate part of the tax by application to the comptroller, pursuant to section 920 of the Greater New York charter, and he may obtain similar relief as to assessments for benefits under section 1021 of said act.

APPEAL by the defendants, Robert J. Rooney and another, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Bronx on the 23d day of August, 1916, upon the decision of the court after a trial at the Bronx Special Term, the facts having been stipulated.

*Lawrence N. Martin,* for the appellants.

*August Weymann,* for the respondent.

*William H. King,* for The City of New York.

SHEARN, J.:

This is an appeal from a judgment in favor of the plaintiff in an action brought to foreclose a transfer of tax lien.

On December 16, 1912; the city of New York sold and thereafter transferred and delivered to plaintiff's assignor a transfer of tax lien designated as lien No. 4,231 for unpaid taxes, water rents and assessments affecting lands and premises in the borough of The Bronx, New York city, described in said transfer of tax lien as "Section 11, Block 2974, Lot 52, * * * Location Simpson Street, between Freeman and Home Streets, assessed to — unknown owner," levied during the years 1901 to 1911, both inclusive.

During the years 1901 to 1911, and since the year 1898, these premises so described and assessed in gross as one parcel, "Lot 52," actually consisted of two separate houses, on two separate lots, with a fence on the division line between them, and were during all that time in the actual ownership of different persons.

On the roll of assessed valuations for 1901 there appeared under the title " Owner or Occupant," " Ninth Nat'l Bank; " under " Description of Property," " H. & L.; " under " Lot No.," " 52; " under " Value of Real Estate in Dollars," " $4,400; " under " Taxes in Dols. Cts.," " $101.96," and under " Regular. Rents," " $8.90 $8.90."

On the roll of assessed valuations for 1902 there was substituted for the title " Description of Property " the title " Houses on Lot," and an additional column was inserted entitled " Street No." The entries were the same as for 1901, except that under the title " Street No." appeared " 1191, 1189." The assessment rolls of the property in question for the years 1903 to 1911, inclusive, are all similar to the one for 1902.

In the annual record verified by the deputy tax commissioner in each year from 1901 to 1911, inclusive, there appeared under the title " Owner or Occupant," " Ninth National Bank; " under the title " Size of Lot," " 31.52x62.25 Irr.; " under the title " Size of House," " 16.8x40; " under the title, " Stories High," " 2 & B; " under the title " Houses on Lot," " 2F; " under the title " Street No.," " 1191, 1189; " under the title " Ward Lot or Map No.," " 52; " and under the title " Value of Real Estate with Improvements Thereon," " $4,400." Appended to each of these annual records was the affidavit of a deputy tax commissioner that the book, volume 3, in which this record appeared " contains a detailed statement of all the taxable real property in Volume Three, in The Borough of the Bronx, in the City of New York," and " That I have personally examined each and every house, building, lot, pier, and other assessable property within said district; that in said book is set down and given the street, block and ward map numbers of said real estate within said district, together with the name of the owner or occupant thereof, so far as the same are known; and also, in my judgment, the sums for which said property under ordinary circumstances would sell, with such other information in detail as the said Commissioners have from time to time required."

The validity of the assessment is assailed on various grounds.

(1) The true name of the owner or occupant was not stated. But this is not necessary. (*People ex rel. Myers* v. *Moynahan*, 130 App. Div. 46; *Haight* v. *Mayor, etc.*, 99 N. Y. 280.) " The

scheme of assessment and taxation provided for the city of New York has no similarity to the general law applicable to the other portions of the State." (*People ex rel. Thomson* v. *Feitner*, 168 N. Y. 449.) Chapter 542 of the Laws of 1892,* entitled "An act to provide for the establishment of the system of block tax assessment-maps and records in the city of New York," provides for the preparation of a land map of the city of New York, under the direction of the commissioners of taxes and assessments of the city of New York, to be designated as "the block map of taxes and assessments of the city of New York," upon which shall be exhibited under sections and section numbers and block and block numbers, the separate lots or parcels of land owned or taxed within each of the city blocks. This statute contemplates that each separately assessed parcel of land will be described on the tax rolls of the city of New York by a designation consisting of a certain number of a certain block in a certain section. One of the purposes of this act is to obviate the necessity of setting forth on the tax rolls a detailed description of the real property assessed. The designation of land in the city of New York for purposes of taxation and assessment by its section, block and lot number, is a designation of which the court will take judicial notice. Lands so designated can be definitely and accurately located and identified. (*Lancaster S. B. I. Co.* v. *City of New York,* 214 N. Y. 1.)

(2) No personal examination of each house was made by the deputy commissioner, it is claimed, because the "Size of House" was reported as "16.8x40," whereas there were two separate houses, one 14.85x39.73, and the other 16.67x49.71. But the deputy makes affidavit that he did make a personal examination, and both the annual records and the assessment rolls so indicate, for in all of the latter, except for 1901, two street numbers are shown, and in the one for 1901 two sets of figures for rents are given, and in the annual records not only are two street numbers given but the report clearly indicates two frame houses each consisting of two stories and a basement.

---

* Repealed by Laws of 1916, chap. 491, § 4. Now Greater New York Charter (Laws of 1901, chap. 466), § 891a, as added by Laws of 1916, chap. 491.— [REP.

(3) It is claimed that no sufficiently detailed statement of the property was given because two separate houses were not shown as standing on the lot. As just shown, the annual records show two separate houses if ordinary effect is given to the abbreviations used, and the assessment rolls indicate two houses from the separate statement of two water rents in connection with two street numbers. But it was held in *Lancaster S. B. I. Co.* v. *City of New York* (*supra*) that the statute does not require that the annual record shall disclose the existence of buildings or structures upon the lot or their value.

(4) The annual record does not state separately the value of the property unimproved. This is a provision intended merely to instruct and guide the assessing officers and is directory and not mandatory. "The failure to comply strictly with a directory provision does not render the assessment or tax invalid." (*Lancaster S. B. I. Co.* v. *City of New York, supra*, 12.)

(5) It is claimed that the abbreviation " H & L " falls short of a description of two separate two-story and basement houses, each house of a separate length and width. While the use of this abbreviation was condemned in *Ventriniglia* v. *Eichner* (155 App. Div. 236), that litigation was between two private parties, and, the city not being a party, the attention of the court was not called to chapter 542 of the Laws of 1892, which in *Lancaster S. B. I. Co.* v. *City of New York* (*supra*) was deemed controlling in determining the sufficiency of the description of the premises assessed in the city of Greater New York. Moreover, it was expressly held by the Court of Appeals in the *Lancaster* case that in the city of Greater New York it is not necessary that the annual record shall either describe or disclose the existence of improvements on the premises assessed; and, therefore, our decision in *Ventriniglia* v. *Eichner* (*supra*), although not considered by the Court of Appeals in the *Lancaster* case, must be deemed to have been overruled thereby in so far as it applies to the validity of a tax description in the city of Greater New York.

The purpose of these requirements must be kept in mind. So far as the owner of the property and the public are concerned, the object sought is such a description of the property as defines to the owner and the public the property upon which the assess-

ment is placed. (*Lancaster S. B. I. Co.* v. *City of New York, supra.*) Here, where the lot number and the street numbers were stated, neither the owner nor the public would be uninformed or misinformed as to the precise property assessed. This view was in effect adopted by this court in the case of *Tax Lien Company* v. *Bird* (163 App. Div. 957), subsequent to the *Ventriniglia* case, affirming the decision of Mr. Justice GUY at Special Term, reported in the New York Law Journal (July 15, 1913, p. 1889), where, as the opinion shows, the property was described by lot, block and section numbers, but no dimensions or survey were given, and the claim was that there was no adequate description of the property subject to the tax.

(6) No separate value was stated for each parcel of the lot on which the two separate houses stood. As pointed out above, the method of assessment and taxation prescribed for the city of New York is by section, block and lot numbers. The unit is a definite ascertainable lot on the land map of the city of New York, prepared pursuant to the act of 1892, which was intended to conform as nearly as possible to the dimensions and content of the separate parcels owned in each block. It was not, and could not have been, the intention of the Legislature to make such conformity essential to the validity of the assessment. Such a construction of the act would place upon the department of taxes and assessments the burden of examining the record of conveyances throughout the entire city annually to discover if any part of a separately assessed parcel had been subdivided during the preceding year in order to separately assess each parcel of real property separately owned. The validity of taxes and assessments levied upon property as one parcel although held in separate ownerships was upheld in *People ex rel. Lazarus* v. *Feitner* (65 App. Div. 318; affd., 169 N. Y. 604) and in *People ex rel. Quaranto* v. *Moynahan* (148 App. Div. 744; affd., 205 N. Y. 590). In the former case there was a single building erected upon six separate lots separately owned and the property was assessed as one parcel. True, it was not practicable to make a separation in that case, but in the *Quaranto* case the relator's vacant land was assessed together with land belonging to other persons as one tax lot and designated by a single lot number. The tax lien affecting the

entire lot was sold and it was held that the taxes and assessments were valid. It was entirely practicable to assess separately the vacant lands separately owned. There is no occasion for any such separation, however, under our taxation scheme in which the lot is the unit.

Appellants complain, however, that in or about the year 1900, prior to the levying of the earliest item, one of the appellants requested of a deputy commissioner of taxes that the property be apportioned and subdivided in accordance with the description contained in deeds and a survey which was left with the deputy, but that the deputy failed to apportion the lot on the tax map. The evidence discloses, however, that no application for a division of the property was made to the board of taxes and assessments and no effort to file an application with the board was made. Deputy tax commissioners are mere employees who perform their duties under the direction and supervision of the board of taxes and assessments. (*People ex rel. Thomson* v. *Feitner*, 168 N. Y. 441, 450.) The tax maps could be changed only upon application to the board of taxes and assessments. The remedy of an owner in such a situation as either of these defendants is to discharge his proper proportionate part of the tax by application to the comptroller pursuant to section 920 of the Greater New York charter (Laws of 1901, chap. 466, as amd. by Laws of 1907, chap. 303, and Laws of 1908, chap. 490), and he may obtain similar relief as to assessments for benefits under section 1021 of that act (as amd. by Laws of 1908, chap. 490). (*People ex rel. Quaranto* v. *Moynahan, supra.*) The course pursued by the defendants, where full relief was provided by law, in deliberately refraining from paying their taxes for eleven years, and then seeking to invalidate the assessments on most technical grounds, no one of which, if valid, substantially affected them, does not commend itself to the court.

The judgment of the Special Term is affirmed, with costs.

CLARKE, P. J., LAUGHLIN, DOWLING and DAVIS, JJ., concurred.

Judgment affirmed, with costs.