[Civ. No. 6529. First Appellate District, Division One.—December 28, 1928.]

MAUDE M. STEWART, Respondent, v. S. C. ATKINSON et al., Appellants.

William R. Biaggi for Appellants.

J. A. Bardin and Russell Scott for Respondent.

CAMPBELL, J., *pro tem.* — This is an appeal from a decree adjudging plaintiff to be the owner of certain real property in Monterey County and quieting her title against the claims of defendants.

It is conceded that on and for a long time prior to June 24, 1912, Mary A. Wagner was the owner in fee simple and in the exclusive possession of lot 10 and the northerly one-half of lot 12, in block 132, of Carmel-by-the-Sea, Monterey County; also that she died on June 14, 1924, and that the defendant Anna S. Fisher is, and was at the time of the trial of the action, the duly appointed, qualified, and acting administratrix of the estate of Mary A. Wagner, deceased. It is also conceded that on and for a long time prior to June 24, 1912, the defendant Nettie E. Wagner was the owner in fee simple and in the possession of the southerly one-half of lot 12, block 132, Carmel-by-the-Sea. It is further conceded that the title and right of possession, which the plaintiff claims in and to the lands and premises involved in the action, is based upon a certain tax deed dated July 16, 1917, from J. E. Hunter, tax collector of Monterey County, to the state of California, recorded July 18, 1917, in volume 13 of tax deeds, page 190, Monterey County records, conveying to the state of California for the sum of $1.42 that certain real property in the county of Monterey, state of California, and more particularly described as follows: "As per map of Carmel-by-the-Sea, Lot 10, Block 132"; also another tax deed made by the same grantor to the same

grantee dated July 16, 1917, and recorded July 18, 1917, and conveying for the sum of ninety-six cents that certain real property in the county of Monterey, state of California, and more particularly described as follows: "As per map of Carmel-by-the-Sea, Lots, one-half of Lot 12, Block 132"; that by deed dated May 17, 1923, J. E. Hunter, tax collector of Monterey County, conveyed to Wade Stewart the real property in dispute, described as situate in the county of Monterey, state of California, and more particularly described as follows: "Property sold to the State June 24, 1912, for tax of 1911, as per map of Carmel-by-the-Sea, Lot 10, Block 132; as per map Carmel-by-the-Sea, one-half of Lot 12, Block 132, which deed was recorded May 21, 1923, in Liber 17 of Official Records, Folio 310, Monterey County Records." It is further conceded that Wade Stewart died during the pendency of the action and that on May 17, 1925, after due and regular proceedings had therefor in the matter of the estate of Wade Stewart, deceased, the superior court of Monterey County duly made and entered its order assigning the whole of the estate, including whatever interest the deceased had in and to the property in controversy, to the present plaintiff herein, Maude M. Stewart, the widow of Wade Stewart, deceased.

■ Appellants contend that the tax deeds through which plaintiff derived title are void; that, as held in *Pretty* v. *Warden*, 38 Cal. App. 708 [177 Pac. 490], "proceedings calculated to deprive the owner of his property under the taxing power are *in invitum* and that all of the requirements of the statute respecting the same must be complied with." The reasons assigned by appellants as to why the tax sales and tax titles based thereon are invalid are that the descriptions of the property set forth in the assessment and in the tax deeds are void for uncertainty in the following particulars: "It is not stated in the descriptions that the property is located in any city or town. The property is merely described by reference to a map of Carmel-by-the-Sea, and the evidence shows that there are two maps of Carmel-by-the-Sea of record in the office of the County Recorder of Monterey County, each of said maps containing a Lot 10, Block 132, and also a Lot 12, Block 132, and it does not appear from the evidence which of said maps the assessment refers to or which map the assessor had in mind when he prepared the assessment roll," and as to the description of one-half

of lot 12, block 132, it is further uncertain in that "it cannot be ascertained, either from the description of said lot, as set forth in the assessment roll, nor from the description contained in the tax deeds, what portion, or half, of Lot 12, Block 132, is attempted to be described therein, nor can it be ascertained therefrom whether it is the north, south, east, west or middle one-half of said lot, nor whether the said half is in the shape of a square, circle or rectangle." Appellants also urge in their opening brief that the auditor did not correctly compute the interest and penalties. This latter objection is waived by appellants in their closing brief in which they concede that both of the parcels of property in question were sold by the tax collector for the correct amounts and that the taxes, penalties, and costs were correctly computed.

On the date when the assessor of Monterey County prepared the 1911 assessment-roll Carmel-by-the-Sea was not an incorporated town and did not become a town of the sixth class until October 31, 1916, and it is conceded that the lots in question were listed under subdivision 2 of section 3650 of the Political Code. This section provides: "The assessor must prepare an assessment book with appropriate headings as directed by the state board of equalization, in which must be listed all property within the county and which shall show under appropriate headings; . . . Subdivision 2. Land by township, range, section, or fraction of section; and when such land is not a congressional division or subdivision, by metes and bounds or other description to identify it; city and town lots, naming the city or town and the number of lot and block according to the system of numbering in said city or town," etc.

By stipulation of the parties it appears as a fact in the case that the map of "Carmel-by-the-Sea" is a map of record in the office of the county recorder of Monterey County and was of record in Map Book 1 at page 2, on March 7, 1902, and that in the same volume at page 52 there is another map showing the same property—that is, lots 10 and 12, block 132, appear on each of such maps in every respect identical. As to the map on page 2, the stipulated facts show it to be a "map of Carmel-by-the-Sea," while no title, so far as the stipulated facts show, appears on the map recorded on page 52.

Appellants rely on the case of *Cadwalader* v. *Nash*, 73 Cal. 43 [14 Pac. 385], quoting the following, which they claim is decisive of the first point urged here: "That a sheriff's deed is void for uncertainty when the reference contained therein is equally applicable to two different maps and in an action founded thereon parol evidence of the sheriff to identify the one referred to is inadmissible." In that case the two maps in evidence represent blocks and lots of corresponding numbers as being situated in different parts of Middletown, and consequently the court held the description void for uncertainty. Here, however, the same lots and blocks appear identically the same on two maps, only one of which, however, is entitled "Carmel-by-the-Sea." It is only where there is a difference between two maps so far as the assessed property is concerned that the question as to which map was intended can arise. In *Baird* v. *Monroe,* 150 Cal. 571 [89 Pac. 356], this language is used: "If by such evidence it was made to appear that there was such a recorded map, and only one said map, or, if more than one, no difference therein so far as the assessed property was concerned, the evidence was sufficient to sustain a conclusion that the assessment sufficiently identified the property. The trial court had the right to assume, in the absence of a showing to the contrary by the person assailing the description, that there was but one Pellissier tract in the County of Los Angeles, and that this tract and the extent of its boundaries were well known by the name (*People* v. *Leet,* 23 Cal. 167])." An so in the present case the court had the right to assume—there being no proof to the contrary, and no evidence as to the designation of the map recorded in liber 1, page 52—that the "map of Carmel-by-the-Sea, recorded in liber 1, page 2, was the only map of "Carmel-by-the-Sea," or, that as the two maps were identical so far as the assessed property was concerned, that this tract and the extent of its boundaries were well known by that name.

If the language of the court in *Baird* v. *Monroe, supra,* announces the correct rule, it is decisive of the objection urged against the descriptions as being uncertain because of their being two maps. Appellants contend that as it appears from the evidence in the Baird case that there was but one map of the Pellissier tract in the county of Los Angeles

the language of the court above quoted is mere *dicta*. While it is true that this language was not indispensable to the conclusion reached in the decision, we think it states the correct rule and the descriptions here sufficiently comply with the provisions of section 3650, subdivision 2, of the Political Code as a "description sufficient to identify it," as against the first objection urged.

As to the description contained in the assessment and tax deed with respect to the one-half of lot 12, block 132, assessed to defendant Nettie E. Wagner, who it is conceded was the owner of the south one-half of such lot, and which was assessed and deeded as "one-half of Lot 12, Block 132," we think the description is void for uncertainty in that it cannot be ascertained from the description which half of the lot is attempted to be described. In *Harvey* v. *Meyer*, 117 Cal. 60 [48 Pac. 1014], the court lays down the rule in tax proceedings that no presumption of fact may be indulged in as to the size, location or extent of a lot, nor is parol evidence admissible to ascertain what particular tract or lot the assessor had in mind when making the assessment. An assessment so indefinite and uncertain as to render it impossible to determine what part of the land was intended to be assessed—what particular half of a lot—is invalid. (*People* v. *Flint*, 39 Cal. 670; *Ventriniglia* v. *Eichner*, 155 App. Div. 236 [140 N. Y. Supp. 395].) "Section 3650 of the Political Code of this state provides that property shall be listed by the assessor in accordance with the following method: Land, by township, range, section or fractional section, and when such land is not a congressional division or subdivision, by metes and bounds, or other description sufficient to identify it. . . . Any assessment not in conformity with the section is wholly void" (*Smith* v. *City of Los Angeles*, 158 Cal. 707 [112 Pac. 307]; *Palomares Land Co.* v. *Los Angeles Co.*, 146 Cal. 536 [80 Pac. 931]).

We have examined the cases cited by respondent to support her contention that the description "one-half of lot 12" means an undivided one-half and that therefore respondent's tax deed makes her a tenant in common with appellant Nellie E. Wagner, who, it was conceded at the trial, was the owner of the south one-half of lot 12, and who paid the taxes levied and assessed against her property for the year 1911. The cases cited are not in point as they

all involve conveyances between private persons, while here we are concerned with a conveyance based upon tax proceedings which are *in invitum.* "A description sufficiently certain to convey land between man and man, and which if contained in an agreement to convey, would authorize the court of equity to decree specific execution, would not answer in the proceeding to enforce the collection of a tax" (*Commercial Nat. Bank* v. *Schlitz,* 6 Cal. App. 182 [91 Pac. 753]; *Miller* v. *Williams,* 135 Cal. 185 [67 Pac. 788]). "In the case of private transactions, the courts in construing the document, endeavor to collect the intention of the parties, and give that intention effect. . . . But in these tax proceedings the owner of the estate has nothing to do; he intends nothing. The government is acting, through its agents, in hostility to him, and with the view of enforcing the collection of a tax from him" (*People* v. *Mahoney,* 55 Cal. 288). In tax proceedings "the description must be certain of itself, and not such as to require the evidence *aliunde* to render it certain. . . . Certainty in the description is required to apprise the owner that his property is advertised for sale, and to enable him to prevent the sale by the payment of the taxes thereon and to impart information to bidders of the actual extent and location of the premises to be sold. All subsequent proceedings depend upon his certainty. An inaccurate or an uncertain description defeats every step subsequently taken, and, as we have already said, the uncertainty cannot be cured by evidence *aliunde.*" (*Keane* v. *Cannovan,* 21 Cal. 302 [82 Am. Dec. 738]. See, also, *Roberts* v. *Chan Tin Pen,* 23 Cal. 367; *Mountain Club* v. *Pinney,* 67 Cal. App. 251 [227 Pac. 630]; *Miller* v. *Williams,* and *Smith* v. *City of Los Angeles, supra.*)     A deed founded on an invalid assessment is itself void (*Emeric* v. *Alvarado,* 90 Cal. 444 [27 Pac. 356]).

That part of the decree in which it is adjudged that plaintiff is the owner and entitled to the possession of lot 10 in block 132, as laid down and designated upon that certain map entitled "map of Carmel-by-the-Sea, Monterey County, State of California," and quieting her title against the claims of defendants, is affirmed; and that part of the decree adjudging plaintiff to be the owner of an undivided one-half interest in and to lot 12, block 132, as laid down and described on that certain map entitled "map of Carmel-by-the-Sea,

Monterey County, State of California," and quieting her title thereto, is reversed. Each party to pay his and her own costs of appeal.

Knight, Acting P. J., and Cashin, J., concurred.